598 A.2d 287

**COMMONWEALTH of Pennsylvania**

v.

**Robert BARTOLACCI, Appellant.**

Superior Court of Pennsylvania.

Argued April 16, 1991.

Filed Sept. 5, 1991.

Reargument Denied Nov. 4, 1991.

Thomas J. Schuchert, Pittsburgh, for appellant.

James R. Gilmore, Asst. Dist. Atty., Pittsburgh, for the Com., appellee.

Before McEWEN, DEL SOLE and FORD ELLIOTT, JJ.

DEL SOLE, Judge:

This is a direct appeal from the Judgment of Sentence which directed that Appellant serve the mandatory term of three to six years imprisonment following a jury conviction of Homicide by Vehicle While Under the Influence of Alcohol. Although we dismiss many of the claims made by Appellant on appeal, we find merit to Appellant's claim that the trial court erred when it excluded relevant evidence of other accidents which occurred at this accident site. Accordingly, we vacate the sentence, reverse the conviction and remand this matter for a new trial.

The accident occurred as a vehicle Appellant was operating exited the Oakland exit of the Parkway and entered Forbes Avenue at approximately 2:10 a.m. Shortly after entering Forbes Avenue, the vehicle collided with a steel pole situated on the curb of the road. A back seat passen-

ger, Ms. Guilbeau, was thrown forward and sustained a head injury which eventually resulted in her death. At trial the Commonwealth offered testimony of Appellant's consumption of alcoholic beverages prior to the accident, and the results of blood alcohol tests which were later performed at Mercy Hospital.

Appellant presents three issues for our review. He contends that the Commonwealth failed to prove that the death of Ms. Guilbeau was caused by his driving with an blood alcohol level in excess of .10%. In a related vein he submits that the Commonwealth did not establish by competent evidence that his blood alcohol content at the time he was operating the vehicle was .10% or greater. In his last issue he contends that the court abused its discretion and committed an error of law when it failed to permit evidence of other circumstances that the jury could find to be the primary or direct cause of the death in question. Included in the first two issues are numerous subissues which need not be addressed in view of the fact that we determine a new trial must be awarded. However, Appellant does include a question as to whether the blood testing results should have been suppressed based upon a lack of consent. For the reasons expressed in the trial court opinion, we readily dismiss this claim.

The first two issues presented by Appellant call in question the apparent practice of testing blood serum. The Commonwealth in an effort to prove that the Ms. Guilbeau's death was caused by Appellant driving with a blood alcohol content of .10% or greater offered expert testimony based upon blood tests performed after the accident. It became apparent during cross-examination that the testing of Appellant's blood was a test performed on serum rather than whole blood. The manager of the toxicology section of the Allegheny County Department of Laboratories testified that serum is acquired after a whole blood sample is centrifuged and the top liquid residue is removed. This witness also testified that when serum blood is tested the results will show a blood alcohol content which can range from

between 10 to 20 percent higher than a test performed on whole blood. The statute which addresses blood alcohol content makes it an offense for a person to operate a vehicle while "the amount of alcohol by weight in the blood of the person is 0.10% or greater." 75 Pa.C.S.A. § 3731(a)(4). The witness testified that a reference to the amount of alcohol in blood by weight refers to whole blood.

■ While our statutes do not dictate in what form blood must be tested [1], only evidence of the amount of alcohol by weight in the person's blood can support a conviction based upon a violation of § 3731. Where a test is performed on blood serum rather than whole blood, the fact finder must be informed of this and must be provided with evidence of the alcohol by weight in the defendant's blood in order to properly sustain a conviction based upon a violation of § 3731. Evidence offered of a reading based upon a test of blood serum, without conversion, will not suffice.

■ In this case during cross examination the jury was informed through expert testimony that the blood alcohol test performed on Appellant's blood serum after the accident yielded a result of .156%. In an effort to determine that the death in this case was a "direct result" of Appellant's violation of § 3731(a)(4), the Commonwealth's expert also testified regarding Appellant's blood alcohol level related back at the time of the accident. The expert took into account what he found to be appropriate amounts for the absorption of alcohol consumed shortly prior to the accident, and arrived at a figure of .138%. The jury was also advised through cross examination of the need to convert this figure to determine the alcohol by weight in Appellant's blood. The expert opined that a 15% conversion rate would be appropriate. From this testimony the jury was free to conclude that Appellant's whole blood alcohol content at the time of the accident exceeded .10%. Although the jury was provided information from which to determine Appellant's

1. *See* 75 Pa.C.S.A. § 1547(c) and 28 Pa.Code 5.1(v) (defining a "specimen" as "materials derived from the human body regardless of the physical character of such material.")

blood alcohol level, we caution the Commonwealth that a conviction based upon a violation of § 3731(a)(4) will not be upheld absent clear evidence that the alcohol content in a defendant's blood is .10% or greater and that evidence of test results based solely on blood serum will not suffice to sustain a conviction.

■ We turn now to Appellant's claim that the trial court erred when it refused to admit evidence which he submits was critical to his defense. At trial Appellant sought to admit evidence of other accidents which occurred at the location of this accident and evidence of the subsequent removal of the utility pole which his vehicle struck. Appellant offered this evidence to rebut the Commonwealth's evidence which was offered to show that the accident and resulting death occurred as a result of his drunk driving. Appellant desired to prove that the dangerous condition of the roadway and the location of the utility pole were the cause of the accident. Guided by the Pennsylvania Supreme Court decision in *Commonwealth v. Uhrinek*, 518 Pa. 532, 544 A.2d 947 (1988), we agree.

In *Uhrinek* the trial court excluded evidence of the intoxication of a pedestrian who was struck and killed by a vehicle operated by the appellant. The Supreme court reversed his homicide by vehicle conviction and remanded for a new trial finding that this evidence was relevant to the appellant's theory of the cause of the accident. The court cited the homicide by vehicle statute. It reads:

> Any person who unintentionally *causes* the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic ... is guilty of homicide by vehicle, a misdemeanor of the first degree, when the violation is the *cause* of death.

> 75 Pa.C.S.A. § 3732 (emphasis added.)

The *Uhrinek* court noted that this statute places the burden of proving the causal connection between death and the wrongful act, beyond a reasonable doubt, upon the Com-

monwealth. "The defendant's conduct must be a direct and substantial cause of the injury." *Id.,* 518 Pa. at 540, 544 A.2d at 951. This same burden is placed upon the Commonwealth in proving a violation of 75 Pa.C.S.A. § 3735, which provides:

> Any person who unintentionally *causes* the death of another person as the direct result of a violation of section 3731 (relating to driving under the influence of alcohol or controlled substance) ... is guilty of a felony of the third degree when the violation is the *cause* of death....

(emphasis added.)

The *Uhrinek* court concluded that the trial court's failure to permit the appellant to present this evidence to the jury prevented him from challenging the causal connection between his conduct and the accident. The court stated:

> 'An accused has a fundamental right to present defensive evidence so long as such evidence is relevant and not excluded by an established evidentiary rule.' Once it is determined that the proffered evidence was relevant, due process requires its admission. 'Even the most myopic interpretation of [Article I, Section 9 of the Pennsylvania Constitution] would necessarily concede the right to offer relevant evidence to challenge a material issue of fact.' 'Causation is an issue of fact for the jury.'

*Id.,* 518 Pa. at 542, 544 A.2d at 952 (citations omitted.)

■ As in *Uhrinek,* Appellant here sought to have admitted evidence to establish that something other than his violation of the law was the cause the accident and the resulting death. This evidence was of two types. First, he offered evidence of previous accidents which occurred at the site where the utility pole was located to demonstrate that a dangerous condition existed at that location. Appellant also sought to have introduced testimony on the subsequent removal of the utility pole. Appellant states that he intended to offer evidence that the pole was removed "because it had been the site of many previous, similar accidents and was considered by the Pennsylvania Department of Transportation to be a dangerous condition." Appel-

lant's Brief at 43.[2] Evidence which could establish the dangerous condition of the roadway and which could account for the "cause" of the accident was clearly relevant in this case. In a criminal trial where the jury has the responsibility of determining the "direct cause" of death in order to decide whether or not to covict the defendant of homicide by vehicle, evidence of other factors which may have been the direct cause of death is clearly appropriate.

Following the lead of *Commonwealth v. Uhrinek, supra,* we reverse Appellant's conviction, vacate his Judgment of Sentence and remand this case for a new trial.

Jurisdiction relinquished.

2. While evidence of the removal of the pole, alone, would be irrelevant absent testimony as to the reasons for its removal, where it can be demonstrated that the pole was removed because it created a hazard, this testimony is directly relevant to the ultimate determination of the cause of the accident.