605 A.2d 805

**COMMONWEALTH of Pennsylvania**

v.

**Curtis Alan WANNER, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 1, 1991.

Filed Feb. 13, 1992.

Reargument Denied April 30, 1992.

444

David Eshelman, Reading, for appellant.

David P. Wingert, Asst. Dist. Atty., Lebanon, for the Com., appellee.

Before ROWLEY, President Judge, and CERCONE and MONTEMURO, JJ.

ROWLEY, President Judge.

Curtis Alan Wanner directly appeals from the judgment of sentence entered against him in the Court of Common Pleas of Lebanon County in this criminal action. Appellant raises several issues for our review: (1) whether the trial court lacked sufficient evidence to sustain appellant's convictions for driving under the influence of alcohol and homicide by vehicle while driving under the influence; (2) whether the court erred in instructing the jury that any violation of the vehicle code, without more, can sustain a homicide by vehicle conviction; (3) whether the trial court erred in failing to suppress appellant's inculpatory statements; (4) whether the trial court erred in instructing the jury that whole blood results are not required under the Pennsylvania drunk driving statute; (5) whether the court improperly refused to grant and read appellant's points for charge; (6) whether the trial court erred in failing to suppress appellant's alleged blood alcohol content as the test was performed on plasma and not on whole blood; (7) whether the verdicts are against the weight of the evidence;

and (8) whether the trial court imposed an illegal sentence. We have considered appellant's issues,[1] and we conclude that the trial court lacked sufficient evidence to convict appellant of driving under the influence of alcohol or of homicide by vehicle while driving under the influence. Accordingly, we now arrest judgment on these convictions. Additionally, we conclude that the trial court did not properly charge the jury as to the proper mens rea for homicide by vehicle, and we vacate that conviction and remand for a new trial.[2]

The facts of the case are as follows: Appellant was involved in an automobile accident on August 6, 1989, in Lebanon County. Appellant was allegedly driving on the wrong side of the road when his car collided with another car. The driver of the other vehicle died as a result of the crash. Appellant was taken to M.S. Hershey Medical Center to receive treatment for his injuries, and hospital personnel conducted a medical trauma plasma blood test which resulted in a blood alcohol reading of .136%.

Appellant was subsequently charged with involuntary manslaughter, driving under the influence of alcohol or a controlled substance, homicide by vehicle while driving under the influence, and homicide by vehicle. Appellant was also charged with summary offenses in violation of the vehicle code's guidelines for driving on roadways laned for traffic, driving vehicle at safe speed, reckless driving, and restraint system. Appellant filed a pretrial suppression motion, which the trial court denied after two hearings. Following a jury trial, appellant was convicted of driving under the influence of alcohol, homicide by vehicle, and homicide by vehicle while driving under the influence. The

1. We note that the *en banc* trial court was not provided with a trial transcript for the purpose of considering post-verdict motions. However, appellant's counsel did preserve the issues at trial and in post-verdict motions, and the Commonwealth was put on notice of appellant's objections. As we were provided with a transcript for this appeal, we will address appellant's issues at this time for the purpose of judicial expediency.

2. Due to our resolution of appellant's first three issues, we will not address the merits of issues four through eight.

Honorable G. Thomas Gates also found that appellant committed a summary offense in violation of the statutory guidelines for driving on roadways laned for traffic. The court *en banc* denied appellant's timely filed post-verdict motions. Appellant received the following concurrent sentences: 3–6 years imprisonment plus a $100.00 fine for the homicide by vehicle while driving under the influence conviction, 1–2 years imprisonment for the homicide by vehicle conviction, 48 hours to 2 years imprisonment for the driving under the influence conviction, and a $35.00 fine for the summary violation. Appellant filed this timely appeal.

In his first issue, appellant argues that the trial court lacked sufficient evidence to support his conviction under 75 Pa.C.S.A. § 3731(a)(4). We are limited to a well-established standard of review when addressing sufficiency claims:

> In reviewing the sufficiency of the evidence, we must review the evidence presented and all reasonable inferences taken therefrom in the light most favorable to the Commonwealth, as verdict winner. The test is whether the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt. The credibility of witnesses and the weight to be accorded the evidence produced are matters within the province of the trier of fact; the fact finder is free to believe all, some, or none of the evidence.

*Commonwealth v. Taylor*, 324 Pa.Super. 420, 424–425, 471 A.2d 1228, 1229–1230 (1984) (citations omitted).

Appellant argues that the Commonwealth did not present evidence sufficient to prove beyond a reasonable doubt that his blood alcohol content was 0.10% or greater. 75 Pa. C.S.A. § 3731(a)(4) reads as follows:

> **§ 3731. Driving under influence of alcohol or controlled substance**
>
> **(a) Offense defined**—A person shall not drive, operate or be in actual physical control of the movement of any vehicle while:
>
> > (4) the amount of alcohol by weight in the blood of the person is 0.10% or greater.

■ In order to obtain a conviction under this statute, the Commonwealth must prove two elements: (1) that the accused was driving, operating or in control of a vehicle, and (2) that the accused had an amount of alcohol in the blood that was equal to or greater than 0.10% by weight. *Commonwealth v. Labelle*, 397 Pa.Super. 179, 579 A.2d 1315 (1990) (*en banc*). We conclude that the Commonwealth did not present the fact finder with sufficient evidence to prove appellant's blood alcohol content.

■ The Commonwealth presented a .136% blood alcohol count as evidence of appellant's intoxication. The test which produced this reading was not performed on whole blood. Rather, a review of the record shows that the hospital performed a test on the blood plasma.[3] "Plasma"

---

**3.** The medical technologist who tested the blood sample gave the following testimony at the pre-trial hearing:

Q Is it correct that if a legal analysis had been requested you would have—Milton Hershey Medical Center would have tested whole blood or blood serum?

A They would have tested the whole blood. On this sheet it does say plasma which is part of whole blood.

Q I understand that, but it's (sic)—plasma has certain substances removed from it which is contained in blood; isn't that correct?

A Um hum, yes.

(N.T. 5/22/90, pp. 14–15).

The medical technologist also gave the following testimony at trial:

Q Mrs. Valigorsky, you indicated that the blood was Curtis Wanner's?

A Yes.

Q Is that correct?

A Um hum.

Q Or should I say the plasma you received?

A Yes, um hum. Well, it was blood and then it's spun down to plasma, yes.

Q So before you tested what was in this test tube you removed certain things from the blood; did you not?

A No I did not.

Q Well, when it's spun down and—

A It remained in the tube, okay.

Q So you put the blood on a centrifuge?

A Yes.

Q And certain portions of the whole blood are separated by this process?

A The red cells settle to the bottom, yes.

Q And the sample you analyzed was drawn from the top of the tube?

is defined as "the fluid portion of blood in which particulate components are suspended."[4] The components consist of red corpuscles, white corpuscles and platelets. These components are separated from the blood until only the liquid portion remains. This liquid portion, with the components removed, is the plasma on which the medical blood tests are performed. When a blood test is performed specifically for legal analysis, the test is performed on whole blood. "Whole blood" is defined as "blood from which none of the elements have been removed."

Our Court recently addressed a similar issue in *Commonwealth v. Bartolacci*, 409 Pa.Super. 456, 598 A.2d 287 (1990). The Court in *Bartolacci* reversed appellant's conviction on different grounds, but stated the following about tests conducted on blood serum[5] versus tests on whole blood.

> The Commonwealth in an effort to prove that (decedent's) death was caused by Appellant driving with a blood alcohol content of .10% or greater offered expert testimony based upon blood tests performed after the accident. It became apparent during cross-examination that the testing of Appellant's blood was a test performed on serum rather than whole blood. The manager of the toxicology section of the Allegheny County Department of Laboratories testified that serum is acquired after a whole blood sample is centrifuged and the top liquid residue is removed. This witness also testified that when serum blood is tested the results will show a blood alcohol content which can range from between 10 to 20 percent higher than a test performed on whole blood. "The

> A Yes, the plasma at the top.
> Q And so what you analyzed was only plasma and not the whole blood; is that correct?
> A Yes.
> (N.T. 10/1/90, pp. 26–27)

4. All definitions are taken from Dorland's Illustrated Medical Dictionary, Twenty-fifth Edition, W.B. Saunders Company (1974).

5. Blood serum is defined as "blood plasma from which the fibrinogen has been removed in the process of clotting." Fibrinogen is a coagulation factor.

statute which addresses blood alcohol content makes it an offense for a person to operate a vehicle while 'the amount of alcohol by weight in the blood of the person is 0.10% or greater.' " 75 Pa.C.S.A. § 3731(a)(4). The witness testified that a reference to the amount of alcohol in blood by weight refers to whole blood.

While our statutes do not dictate in what form blood must be tested, only evidence of the amount of alcohol by weight in the person's blood can support a conviction based upon a violation of § 3731. Where a test is performed on blood serum rather than whole blood, the fact finder must be informed of this and must be provided with evidence of the alcohol by weight in the defendant's blood in order to properly sustain a conviction based upon a violation of § 3731. Evidence offered of a reading based upon a test of blood serum, without conversion, will not suffice.

In this case during cross examination the jury was informed through expert testimony that the blood alcohol test performed on Appellant's blood serum after the accident yielded a result of .156%. In an effort to determine that the death in this case was a "direct result" of Appellant's violation of § 3731(a)(4), the Commonwealth's expert also testified regarding Appellant's blood alcohol level related back at the time of the accident. The expert took into account what he found to be appropriate amounts for the absorption of alcohol consumed shortly prior to the accident, and arrived at a figure of .138%. The jury was also advised through cross examination of the need to convert this figure to determine the alcohol by weight in Appellant's blood. The expert opined that a 15% conversion rate would be appropriate. From this testimony the jury was free to conclude that Appellant's whole blood alcohol content at the time of the accident exceeded .10%. Although the jury was provided information from which to determine Appellant's blood alcohol level, we caution the Commonwealth that a conviction based upon a violation of § 3731(a)(4) will not be upheld

absent clear evidence that the alcohol in a defendant's blood is .10% or greater and that evidence of test results based solely on blood serum will not suffice to sustain a conviction.

*Id.,* 409 Pa.Superior Ct. at 458–459, 598 A.2d at 288.

■ A comprehensive review of the record shows that the Commonwealth did not produce any evidence that would allow the fact finder to convert the result of the plasma test into an amount of alcohol by weight in the whole blood. As the statute requires a "whole blood" analysis, we see no reason to distinguish a test on serum from a test on plasma. As both plasma and serum tests are performed on only a portion of whole blood, both tests require conversion to establish the correlative whole blood test result. In the absence of any converting evidence, appellant's convictions for driving while under the influence of alcohol and homicide by vehicle while driving under the influence of alcohol cannot be sustained. Accordingly, we arrest judgment on these two convictions.[6]

■ Appellant also alleges that the trial court erred in instructing the jury on the mens rea requirement for homicide by vehicle. We agree that the trial court gave an improper charge.

We apply the following standard in our review of the trial court's jury charge:

In reviewing a trial court's instructions to the jury, it is well settled that we must view the court's charge in its entirety to determine whether any prejudicial error has been committed. *Riddle Memorial Hospital v. Dohan,* 504 Pa. 571, 576, 475 A.2d 1314 (1984). "A trial court is not required to accept the precise language of points for charge submitted by counsel so long as the issues are defined accurately and the applicable law is correctly reviewed."

6. We also note that the trial court erred in instructing the jury that 75 Pa.C.S.A. § 3731(a)(4) did not require a blood alcohol count from whole blood, but that a result from blood plasma would suffice. (N.T. 10/3/90, pp. 75–76).

*Hoffman v. Memorial Osteopathic Hospital,* 342 Pa.Super. 375, 379–380, 492 A.2d 1382, 1384–1385 (1985).

██ In the instant case, the trial court gave the jury the following instruction:

Count IV charges homicide by vehicle. The Motor Vehicle Code provides, members of the jury, as follows: Any person who unintentionally—now, there is no evidence here at all that this defendant intended to cause anyone's death, much less Mr. Sheffy's, but that's not the case. The case here is any person who unintentionally causes the death of another person while engaged in the violation of any law of this Commonwealth or ordinances applying to the operation or use of a vehicle or to a traffic regulation is guilty of homicide by vehicle when the violation is the cause of death.

... So, if you find that this defendant in any way violated the provisions of the Motor Vehicle Code, and that it was the cause of the death then, of course, you would find the defendant guilty.

(N.T., 10/3/90, pp. 76–77). The Pennsylvania Supreme Court stated the applicable mens rea necessary to sustain a homicide by vehicle conviction in *Commonwealth v. Heck,* 517 Pa. 192, 535 A.2d 575 (1987), as follows:

We now hold that ordinary negligence will not sustain a conviction for the offense of homicide by vehicle. The applicable mens rea requirements of culpability are those enumerated in 18 Pa.C.S. § 302(a). Section 302(a) provides,

(a) **Minimum requirements of culpability.**—Except as provided in section 305 of this title (relating to limitations of scope of culpability requirements), a person is not guilty of an offense unless he acted intentionally, knowingly, recklessly or negligently, as the law may require, with respect to each material element of the offense.

*Id.,* 517 Pa. at 200, 535 A.2d at 579. If the trial court fails to charge the jury on the applicable mens rea, a new trial is warranted. *Commonwealth v. Safrit,* 517 Pa. 484, 486, 538 A.2d 1335, 1335 (1988).

■ We conclude that appellant's challenge to the jury instruction merits relief. The trial court's charge to the jury did not specify any mens rea requirements. The jury was impermissibly permitted to decide that any violation of the vehicle code, including a violation resulting from ordinary negligence, was sufficient to sustain a conviction for homicide by vehicle. Accordingly, we vacate and remand for a new trial on the charge of homicide by vehicle.

■ Appellant's third issue for review contends that the trial court erred in failing to suppress appellant's inculpatory statements. We conclude that the trial court properly denied appellant's suppression motion.

Our standard for reviewing a trial court's denial of a suppression motion is firmly established:

> The suppression court must make findings of fact and conclusions of law in determining whether evidence was obtained in violation of the defendant's rights. The burden of proving the admissibility of the evidence lies on the Commonwealth's shoulders; the standard by which the court determines the legitimacy of the search and seizure, and hence the admissibility of the evidence whose suppression has been moved, is that of the preponderance of the evidence. Pa.R.Crim.P. 232(h). On appeal we must determine whether the record supports the factual findings of the suppression court, as well as determine the reasonability of any inferences and legal conclusions drawn from the court's findings of fact.

*Commonwealth v. Eliff,* 300 Pa.Super. 423, 428, 446 A.2d 927, 929 (1982) (citations omitted).

Although appellant does not specify the precise statements challenged, he contends that his *Miranda* waiver was not knowing, intelligent, or voluntary because he was on medication and in a hospital setting. Appellant cites *Commonwealth v. Cornish,* 471 Pa. 256, 370 A.2d 291 (1977), and *Commonwealth v. Hunt,* 263 Pa.Super. 504, 398 A.2d 690 (1979), as support for his argument that the interrogating officer should have obtained an expert medical appraisal

of his physical and mental condition prior to interrogation. (Appellant's brief at 14–15.) This assertion is in error. Although the Supreme Court in *Cornish* indicated that such an appraisal might be preferable, the absence of such an appraisal does not destroy the voluntary nature of any *Miranda* waiver or inculpatory statements. Our Court, in *Commonwealth v. Hunt, supra,* stated:

> Thus, while expert medical testimony would be helpful to the suppression court in determining the accused's physical and mental impairities (sic), the foregoing cases demonstrate that the credible testimony of the interrogating officers alone can substantiate a finding of voluntariness.

*Id.,* 263 Pa.Superior Ct. at 511, 398 A.2d at 690. The interrogating officer testified as to the voluntary nature of appellant's statements, and a thorough review of the record supports the trial court's determination that the statements were voluntary.[7] Accordingly, the trial court did not err in denying appellant's motion to suppress.

For the reasons noted above, we arrest judgment on the convictions for driving while under the influence of alcohol and homicide by vehicle while under the influence of alcohol. We vacate the judgment of sentence on the homicide by vehicle conviction, and remand for a new trial consistent with this decision.[8]

*Judgment arrested in part. Reversed and remanded in part. Jurisdiction relinquished.*

---

7. We note that the interrogating officer testified that he spoke with the attending physician about appellant's medication. (N.T. 5/22/90, p. 31) However, the record is not clear as to the content of this conversation or whether the conversation occurred prior to or after interrogation.

8. We note that appellant does not raise any issues challenging the trial court's determination that he committed a summary offense in violation of the statutory guidelines for driving in roadways laned for traffic. Accordingly, we have not addressed this conviction.