686 A.2d 403

**COMMONWEALTH of Pennsylvania**

**v.**

**Steven James MICHUCK, Appellant.**

Superior Court of Pennsylvania.

Argued May 22, 1996.

Filed Nov. 19, 1996.

Joseph E. Buckley, Jr., Brookville, for appellant.

Before CIRILLO, P.J.E., and DEL SOLE, and OLSZEWSKI, JJ.

CIRILLO, President Judge Emeritus.

This is an appeal from a judgment of sentence entered in the Court of Common Pleas of Cameron County. We affirm in part and vacate in part.

Appellant Steven James Michuck was convicted of driving under the influence of alcohol, in violation of 75 Pa.C.S.A. § 3731(a)(5)(i) (driving while blood alcohol content (BAC) is above .10% within three hours after driving, operating or having actual physical control of the vehicle) and 75 Pa.C.S.A. § 3731(a)(1) (under the influence to a degree rendering one incapable of safe driving). The court sentenced Michuck to serve 48 hours to one year in Cameron County Jail, and to pay fines and costs. A post-sentence motion was filed and denied. This appeal followed. Michuck raises three issues for our review:

1. Whether the appellant's constitutional rights to due process and equal protection were violated by the adoption and admission of the arbitrary standards as to the conversion factor used in determining appellant's BAC which was the basis for his conviction?

2. Whether it was prejudicial error for the Court to allow juror number 19 to remain on the jury after objection from appellant's counsel when the arresting police officer was directly in her chain of command?

3. Whether the verdict was against the weight of the evidence when the facts on the record demonstrate a palpable abuse of discretion by the trial judge in admitting the arbitrary testing standard?

In order to preclude confusion as to our discussion of the propriety of blood testing procedures in light of our decision to vacate the appellant's conviction under section 3731(a)(5), we preface our discussion with a review of this

court's decision in *Commonwealth v. Kelley*, 438 Pa.Super. 289, 652 A.2d 378 (1994). In *Kelley*, we stated:

> There exists both statutory and case law authority ruling that blood alcohol content test results are admissible in section 3731(a)(1) cases. Specifically, it has been determined that
>
>> [I]n a § 3731(a)(1) prosecution, so long as the defendant's blood alcohol level exceeds .05%, the Commonwealth may introduce evidence regarding that defendant's blood alcohol level.

*Kelley*, 438 Pa.Super. at 295, 652 A.2d at 381 (*quoting Commonwealth v. Kemble*, 413 Pa.Super. 521, 526, 605 A.2d 1240, 1242 (1992)). *See Commonwealth v. Gonzalez*, 519 Pa. 116, 546 A.2d 26 (1988). (1994). *See also* 75 Pa.C.S.A. § 1547(d)(2), (3).[1] Where a defendant is charged with a violation of section 3731(a)(1), a .10% test result is "but one piece of evidence to be considered in deciding whether the person was under the influence." *Commonwealth v. Sloan*, 414 Pa.Super. 400, 607 A.2d 285, 290 (1992).

In *Commonwealth v. Bartolacci*, 409 Pa.Super. 456, 598 A.2d 287 (1991), this court addressed the practice of testing blood serum, instead of whole blood, to determine blood alcohol content. To prove its case, the Commonwealth in *Bartolacci* presented evidence of the results of blood alcohol testing based on blood serum. *Id.* at 458–60, 598 A.2d at 288. Bartolacci was convicted of homicide by motor vehicle while

---

1. Section 1547(d) provides in part:

    **(d) Presumptions from amount of alcohol.**—If chemical testing of a person's breath, blood or urine shows:

    \*   \*   \*   \*   \*   \*

    (2) That the amount of alcohol by weight in the blood of the person tested is in excess of 0.05% but less than 0.10%, this fact shall not give rise to any presumption that the person tested was or was not under the influence of alcohol, but this fact may be considered with other competent evidence in determining whether the person was or was not under the influence of alcohol. This provision shall not negate the provisions of section 3731(i).

    **(3) That the amount of alcohol by weight in the blood of the person tested is 0.10% or more, this fact may be introduced into evidence if the person is charged with violating section 3731.**

    75 Pa.C.S.A. § 1547(d)(2), (3) (emphasis added).

under the influence of alcohol. *Id.* On appeal, Bartolacci, like the appellant herein, challenged the accuracy of this procedure. *Id.*

The distinction between whole blood and blood serum is significant. "Serum is acquired after a whole blood sample is centrifuged," [2] *Id.* at 458, 598 A.2d at 288, which separates the the blood cells and fibrin, the blood's clotting agent, from the plasma—the clear liquid is the blood serum.[3] When blood serum is tested "the results will show a blood alcohol content which can range from between 10 to 20 percent higher than a test performed on whole blood." *Id.* at 458–59, 598 A.2d at 288. The reason for this is because the denser components of whole blood, the fibrin and corpuscles, *see* footnote 2, *supra,* have been separated and removed from the whole blood, leaving the less dense serum upon which the alcohol level test is performed. The value of the blood alcohol content in the serum is then determined. Because the serum is less dense than whole blood, the weight per volume of the alcohol in the serum will be greater than the weight per volume in the whole blood. Thus, an appropriate conversion factor is required to calulate the corresponding alcohol content in the original whole blood sample. The *Bartolacci* court opined that even though the statutes do not dictate what form of blood must be tested, the only way to convict a person under section 3731 is to present evidence of the amount of alcohol by weight in a person's whole blood, not blood serum. *Bartolacci,* 409 Pa.Super. at 458–60, 598 A.2d at 288. The statutory alcohol content limit, .10%, refers to the alcohol content of whole blood, not blood serum. As such,

**2.** A centrifuge is a machine using centrifugal force for separating substances of different densities, for removing moisture, or for simulating gravitational effects. **Webster's New Collegiate Dictionary** 179 (1981). *See also Taber's Cyclopedic Medical Dictionary* (16th ed.1989), p. 320.

**3.** Human blood is composed of a fluid part (plasma) in which are suspended red and white corpuscles, platelets, and fat globules. *Taber's Cyclopedic Medical Dictionary* (16th ed.1989), p. 223. If whole blood is centrifuged, *see* footnote 1, *supra,* the clear liquid which appears in the upper half of the centrifuge tube is *serum. Id.* at 224. The heavier corpuscles sink to the bottom of the tube. *Id.*

[w]here a test is performed on blood serum rather than whole blood the fact finder must be informed of this and must be provided with evidence of the alcohol by weight in the defendant's blood in order to properly sustain a conviction based upon a violation of § 3731. *Evidence offered of a reading based upon a test of blood serum, without conversion, will not suffice.*

*Id.* at 459, 598 A.2d at 288 (emphasis added).

The *Bartolacci* court determined, therefore, that because the jury was informed of the fact that the blood alcohol test was performed on the defendant's blood serum and that this figure would be converted into a whole blood alcohol content, the jury was free to conclude that Bartolacci's whole blood alcohol content, at the time of the accident, exceeded the limit of .10%. *Id.*

Likewise, in the instant case, Michuck's blood serum was tested.[4] The jury was informed of this fact. The blood serum test indicated a blood alcohol content of .1847%. The Commonwealth introduced into evidence the conversion factor of 1.18, which was used on Michuck's blood serum in order to obtain his whole blood alcohol content.[5] The .1847% figure, then, was converted into a weight per volume relative to that of whole blood (.1847 divided by 1.18), yielding a test result of .15%,

---

**4.** The trial court took judicial notice of the fact that the hospital and laboratory in question were licensed by the Department of Health under the Clinical Laboratory Act and approved by the Department of Health for blood testing for blood alcohol content and to perform alcohol analysis of blood and/or serum.

**5.** Cynthia Ann Emmert, a certified medical technologist, testified at trial. Ms. Emmert stated that the scientifically acceptable range of multipliers in converting serum to whole blood is 1.1 to 1.35; the test in this case utilized the middle range, 1.18. Application of the conversion factor, which ranges anywhere from 1.1 to 1.35, yielded results indicating that Michuck's whole blood alcohol content was above .10%. Even upon application of the top range of the conversion factor (1.35), the calculations yielded a BAC of .137%. Such percentage is well above the statutory legal limit.

In support of her testimony, Ms. Emmert cited to *Garrett's Book of Medical Legal Aspects of Alcohol Determination and Biological Specimens* and to *Clinical Diagnosis and Management by Laboratory Methods*, 17 edition, edited by John Bernard Henry. *See* N.T., March 20, 1995, p. 12.

well above the .10% statutory limit. The Commonwealth, therefore, met the requirements outlined by this court in *Bartolacci.*

■ Michuck next contends that the conversion factor range is arbitrary and violates both due process and equal protection rights. In particular, Michuck contends that because, hypothetically, a person's BAC *may* fall both below and above the legal limit depending upon the conversion factor utilized, use of the conversion factor violates his constitutional rights. We disagree.

The lab technician who conducted the blood serum test on Michuck's blood, Cynthia Emmert, testified that use of the 1.18 conversion factor was standard policy and procedure of the lab. Emmert explained that this particular conversion factor was an average within the acceptable range and was also used in reputable medical literature. Dr. Dennis Sharkey, the pathologist and director of the lab, testified that 1.18 was a generally accepted conversion factor within the scientific community and has been used at Andrew Kaul Memorial Hospital in conducting serum blood alcohol content tests for the past 15 years. Even though the possibility exists that the blood alcohol content conversion from serum to whole blood would fall below .10 if the highest multiplier in the range were utilized, such is not the case here. Although Michuck presents an interesting academic argument, his claim of arbitrariness or unfairness does not pertain to the facts of this case. We will not delve into hypothetical fact patterns.

■ Having determined the propriety of the testing procedures, we next address the validity of Michuck's conviction under section 3731(a)(5) in the wake the Pennsylvania Supreme Court's decision in *Commonwealth v. Barud,* 545 Pa. 297, 681 A.2d 162 (1996). In *Barud,* the Court declared section 3731(a)(5) of the Vehicle Code unconstitutional. The Court determined that section 3731(a)(5), which imposes criminal penalties on individuals who have a blood alcohol content equal to .10% or greater within three hours of driving, violated both state and federal due process guarantees. The Court

concluded that "75 Pa.C.S.A. § 3731(a)(5) is void for vagueness and overbreadth ... [and] clearly, palpably and plainly violates both the Constitutions of the United States and of this Commonwealth." *Id.* at 307–308, 681 A.2d at 166–67.

An unconstitutional statute "is ineffective for any purpose since its unconstitutionality dates from the time of its enactment and not merely from the date of the decision holding it so." *Fornwalt v. Follmer,* 420 Pa.Super. 413, 616 A.2d 1040, 1042 (1992). As stated by our Supreme Court in *Commonwealth v. Brown,* 494 Pa. 380, 431 A.2d 905 (1981):

> [A] court does not have power to enforce a law which is no longer valid.... To do otherwise in criminal proceedings is to impose an unwarranted hardship on defendants which affects their most fundamental rights of life and liberty, while serving no legitimate societal interest in applying an offensive law no longer valid.

*Id.* at 385–86, 431 A.2d at 907–08. We conclude, therefore, that in the interests of justice Michuck's conviction under section 3731(a)(5) must be vacated. *Id.*; *cf. Blackwell v. Com. State Ethics Comm'n.,* 527 Pa. 172, 181–83, 589 A.2d 1094, 1099 (1991)("retroactive application is a matter of judicial discretion which must be exercised on a case by case basis.").

Michuck also contends that the trial court abused its discretion in refusing to strike juror # 19 for cause, when this juror was allegedly within Michuck's arresting officer's chain of command. Specifically, Michuck argues that the court committed prejudicial error by failing to dismiss the juror for cause and, consequently, causing defense counsel to use his last peremptory challenge to strike juror # 19 from the panel.

Our standard of review when evaluating a claim of abuse of discretion by the trial court in refusing to strike a juror due to alleged bias is as follows:

> The test for determining whether a prospective juror should be disqualified is whether he or she is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence, and this is to be determined on the basis of answers to questions and demeanor, *Common-*

*wealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973). It must be determined whether any biases or prejudices can be put aside on proper instruction of the court, *Commonwealth v. Drew,* 500 Pa. 585, 459 A.2d 318 (1983). A challenge for cause should be granted when the prospective juror has such a close relationship, familial, financial, or situational, with the parties, counsel, victims, or witnesses that the court will presume a likelihood of prejudice or demonstrates a likelihood of prejudice by his or her conduct and answers to questions. *Commonwealth v. Colon,* 233 [223] Pa.Super. 202, 229 [299] A.2d 326 (1972). The decision on whether to disqualify is within the sound discretion of the trial court and will not be reversed in the absence of a palpable abuse of discretion, *Commonwealth v. Black,* 474 Pa. 47, 376 A.2d 627 (1977).

*Commonwealth v. Akers,* 392 Pa.Super. 170, 192–93, 572 A.2d 746, 757 (1990).

Presently, Michuck fails to include relevant portions of the record for our review of this claim. Specifically, Michuck has failed to include any relevant voir dire excerpts, any portion of a trial court's colloquy with juror # 19, and the reasons given by the trial court in refusing to dismiss juror # 19 for cause. *See* Pa.R.A.P. § 1911(a) and (d). *See also Commonwealth v. Buehl,* 403 Pa.Super. 143, 588 A.2d 522 (1991) (it is appellant's responsibility to order transcript from court reporter); *Commonwealth v. Hawk,* 386 Pa.Super. 183, 562 A.2d 858 (1989)(burden of ordering transcript for appeal now placed squarely on appellant).

When a transcript of proceedings is unavailable, our rules of court provide an alternative so as not to preclude appellate review. Pennsylvania Rule of Appellate Procedure 1923 states that if a transcript is unavailable, "the appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection." Pa.R.A.P. 1923. Michuck failed to avail himself of this alternative. *See* Pa.R.A.P.1923. *See also Commonwealth v. Osellanie,* 408 Pa.Super. 472, 597 A.2d 130 (1991)(where appellant failed to provide trial transcript on appeal, court refused to consider

issue raised and reminded counsel that Pa.R.A.P.1923 permits an appellant to submit to the court a statement in absence of transcript); *Commonwealth v. Burrows,* 379 Pa.Super. 548, 550 A.2d 787 (1988)(meaningful appellate review does not require a complete trial transcript; "equivalent picture" is all that is required).

In addition, Michuck could have submitted an agreed statement of record to supplement the record. *See* Pa.R.A.P.1924. *See also Commonwealth v. Perkins,* 485 Pa. 286, 294 n. 2, 401 A.2d 1320, 1323 n. 2 (1979) (where notes of testimony taken at criminal suppression hearing could not be transcribed, defense counsel and district attorney filed an agreed upon statement of the record pursuant to Pa.R.A.P.1924); *Commonwealth v. Mason,* 483 Pa. 409, 397 A.2d 408 (1979) (where Commonwealth appealed order sustaining demurrer to criminal charges, parties submitted an agreed statement of record in the form of a narrative of agreed facts to the appellate court). Moreover, Michuck apparently failed to review the record for omissions before the record was submitted to this court. *See* Pa.R.A.P.1926. *See also Commonwealth v. Walsh,* 252 Pa.Super. 111, 114, 380 A.2d 1307, 1308 (1977) ("[T]he responsibility for insuring that the record accurately reflects the proceedings before the lower court rests with the lower court and the parties. It is important that this court receive a complete record the first time the case comes before us.");

In his final issue, Michuck's claims the verdict was against the weight of the evidence due to the trial court's admission of an alleged "arbitrary testing standard." Pursuant to our review of issue one above, we have already determined that the blood testing conducted under the facts of the present case was neither arbitrary nor unfair. *Bartolacci, supra.* Further discussion of this claim, therefore, is unnecessary.

Affirmed in part; vacated in part.