**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Scott James NEWSOME, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 13, 2001.
Filed Dec. 6, 2001.

Robert F. Bernathy, Hawley, for appellant.

Douglas J. Jacobs, Assistant District Attorney, Milford, for Com., appellee.

Before: ORIE MELVIN, TODD and HESTER, JJ.

MELVIN, J.

¶ 1 Appellant, Scott James Newsome, appeals from the judgment of sentence imposed following his conviction for driving while under the influence of alcohol while blood alcohol content is 0.10% or greater in violation of 75 Pa.C.S.A. § 3731(a)(4)(i)[1]. Appellant's sole issue on appeal challenges the sufficiency of the evidence to sustain his drunk driving conviction. We affirm.

¶ 2 The trial court accurately summarized the evidence as follows:

[T]he testimony presented at trial indicated that Trooper Christopher Maguire of the Pennsylvania State Police observed defendant traveling [s]outh on Rt. 507 while running a stationary radar check in that area in the early morning hours of December 17, 1999. At approximately 1:43 am, Defendant passed the Trooper's radar unit and was clocked at a speed of 51 miles per hour in a posted 35 mile per hour zone. After stopping the Defendant's vehicle and briefly speaking with Defendant, the Trooper placed Defendant under arrest for suspicion of driving under the influence.

The Defendant was then transported to Wayne Memorial Hospital, in Honesdale, Pennsylvania, for a blood test. Upon arriving at the hospital, the Troopers advised Defendant of his implied consent and *O'Connell* warnings, after which he consented to the withdrawal and testing of a blood sample. At approximately 2:10 a.m., Sandra Levelle[2], a lab technician at Wayne Memorial Hospital, drew blood from the Defendant's arm and prepared it for analysis. Although Wayne Memorial Hospital is an approved facility for the testing of serum blood levels, they do not test whole blood samples. Because serum is less dense than whole blood, the weight per volume of the alcohol in the serum will be greater than the weight per volume in the whole blood. As the statutory alcohol content limit, .10%, refers to the alcohol content of whole blood and not blood serum, an appropriate conversion factor is then required to calculate the corresponding alcohol content in the original whole blood. The Commonwealth introduced into evidence a high end conversion factor of 1.10 and a low end conversion factor of 1.35, to get a range of potential whole blood alcohol levels from Defendant's blood serum sample.

The report of the lab technician indicated that Defendant's plasma result was 140.3 mg/DL. This figure is not in dispute. Furthermore, Robin Rosler, the interim lab manager at the time these samples were taken and tested, testified that in determining Defendant's blood alcohol content, she relied on con-

---

**1.** The trial court also found Appellant guilty of the summary offense of violating maximum speed limits. 75 Pa.C.S.A. § 3362(a)(3).

**2.** The correct spelling of this witness's surname is Lavelle. N.T., 7/12/00, at 52.

version factors identified in earlier studies on conversion from serum levels to whole blood levels. In addition, the testimony indicated that use of these conversion factors is standard policy and procedure in such circumstances at Wayne Memorial Hospital. Thus, with these conversion factors in mind, Mrs. Rosler then determined that Defendant's blood alcohol level would lie somewhere between .1275% and .1039%, both of which are clearly over the legal limit for driving in Pennsylvania.

Furthermore, Dr. D'Angelo[3], the Commonwealth's expert in toxicology, testified that these conversion factors are widely accepted in the field of toxicology, and are referred to in a number of chemistry books, respected journals, and articles relating to alcohol consumption. In fact, despite the assertions of Defendant, Dr. D'Angelo testified that an individual's red blood cell count is not necessary to convert plasma levels to whole blood levels. Additionally, Dr. D'Angelo submitted his own expert report wherein, based upon Defendant's plasma level of .1403%, he opined that Defendant's whole blood alcohol content was between .107% and .131%. In reaching these figures, Dr. D'Angelo testified that he considered the standard deviation, or possible ten percent error associated with the aforementioned conversion factors, and offered a high-end estimate, as well as a low-end estimate. Never-the-less, [sic] both of the figures he reached while factoring in the possible error in this calculation were still in excess of the legal limit for operating a motor vehicle in Pennsylvania.

Trial Court Opinion, 3/21/01, at 2–4.

¶ 3 The Appellant called only one witness, Dr. Vinson[4], an expert in toxicology, who testified on direct about flaws in the studies relied upon by the Commonwealth's expert in rendering his opinion. Dr. Vinson opined that no professional could "testify with any degree of scientific certainty what [Appellant's] blood alcohol level was." N.T., 7/12/00, at 137. On cross, the Commonwealth presented Dr. Vinson with additional scientific studies that set forth a high-end conversion factor of 1.09 and a low-end conversion factor of 1.18. *Id.* at 150. Dr. Vinson conceded these studies were scientifically valid and, based upon the conversion factor range established therein, it was possible to calculate Appellant's whole blood level. *Id.* at 152. The doctor further noted that he would have used the same procedure as the Commonwealth's witness by applying the high-end and low-end of the conversion factor range. *Id.* at 153. After the jury returned its verdict, Appellant filed post-verdict motions, which were denied. On August 31, 2000, Appellant was sentenced to a term of incarceration of thirty (30) days to two (2) years. Appellant next filed post-sentence motions, which were denied by operation of law on January 9, 2001. This timely appeal followed.

■ ¶ 4 In evaluating a challenge to the sufficiency of the evidence, we must determine whether viewing the evidence in the light most favorable to the verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. *Commonwealth v. Spotz*, 563 Pa. 269, 759 A.2d 1280 (2000). The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. *Commonwealth v. Morales*, 447 Pa.Super. 491, 669 A.2d 1003, 1005 (1996). However, any

---

**3.** The correct spelling of this witness's surname is DeAngelo. N.T., 7/12/00, at 82.

**4.** The notes of testimony incorrectly spelled the doctor's name as Vincent.

questions or doubts are to be resolved by the factfinder, unless the evidence is so weak and inconclusive that as a matter of law, no probability of fact may be drawn from the circumstances. *Id.* The trier of fact is free to believe all, part or none of the evidence. *Commonwealth v. Price,* 416 Pa.Super. 23, 610 A.2d 488, 489 (1992). Upon thorough review of the evidence, it is clear the Commonwealth established beyond a reasonable doubt each element of the DUI offense charged.

¶ 5 The Appellant was charged with and convicted of driving under the influence of alcohol pursuant to 75 Pa.C.S.A. § 3731(a)(4)(i), which provides:

**§ 3731. Driving under influence of alcohol or controlled substance**

(a) **Offense defined.**—A person shall not drive, operate or be in actual physical control of the movement of a vehicle in any of the following circumstances.

\* \* \* \*

(4) While the amount of alcohol by weight in the blood of:

(i) an adult is 0.10% or greater; ...

75 Pa.C.S.A. § 3731. Thus, in order to sustain a conviction under § 3731(a)(4)(i), "the Commonwealth must prove two elements: (1) that the accused was driving, operating or in control of a vehicle, and (2) that the accused had an amount of alcohol in the blood that was equal to or greater than 0.10% by weight." *Commonwealth v. Wanner,* 413 Pa.Super. 442, 605 A.2d 805, 807 (1992) (citation omitted).

¶ 6 Instantly, Appellant concedes he was driving, but alleges the Commonwealth failed to prove beyond a reasonable doubt he was driving while his blood alcohol level was .10% or greater. Specifically, he asserts that the conversion factor used was unreliable. It is unreliable because the

study on which it was based involved participants whose red blood cell count was known, and here the Commonwealth did not establish Appellant's red blood cell count. We disagree.

■▬▬ ¶ 7 The cases addressing and accepting the science behind the conversion of a serum/plasma alcohol content into a whole blood result do not require any showing of the accused's red blood cell count. In *Commonwealth v. Bartolacci,* 409 Pa.Super. 456, 598 A.2d 287 (1991), *appeal denied,* 530 Pa. 638, 607 A.2d 249 (1992), this Court stated:

Where a test is performed on blood serum rather than whole blood, the factfinder must be informed of this and must be provided with evidence of the alcohol by weight in the defendant's blood in order to properly sustain a conviction based upon a violation of § 3731[ (a)(4) ]. Evidence offered of a reading based upon a test of blood serum, without conversion, will not suffice.

*Id.* at 288. *See also Wanner, supra* at 807–809 (holding same). The requirement of conversion evidence recognizes the scientific fact that "serum is less dense than whole blood, the weight per volume of the alcohol in the serum will be greater than the weight per volume in the whole blood. Thus, an appropriate conversion factor is required to calculate the corresponding alcohol content in the original whole blood sample." *Commonwealth v. Michuck,* 454 Pa.Super. 594, 686 A.2d 403, 406 (1996). In fact, the centrifugal process used to collect the serum serves to separate both the red and white blood cells from the sample. *See id.* at 405 fn. 3.[5] Thus, we find Appellant's argument is illogical, and reject his contention that the conversion factor applied to Appellant's plasma/serum

---

**5.** Blood serum is that which remains after the red and white blood cells and other particu-

late matter have been removed. Stedman's Medical Dictionary 1278 (24th ed.1984).

result is unreliable due to the absence of evidence of Appellant's red cell count. There was no evidence presented that knowledge of Appellant's red blood cell count was required to properly apply the conversion factor. In fact, Ms. Lavelle testified to the contrary. N.T., 7/12/00, at 69. Moreover, the conversion factor by definition represents a statistical norm or average derived from a group study and therefore is not concerned with actual blood ratios of any one individual. The establishment of a conversion factor involves a certain degree of variance due to the differing ratios between serum and whole blood found within the public at large. *See* James F. Mosher, 2 Liquor Liability Law § 22.04 (1994). Nonetheless, we have previously determined that conversion evidence is acceptable to sustain a conviction pursuant to 75 Pa.C.S.A. § 3731(a)(4)(i), so long as it provides the jury with clear evidence converting the serum result to a whole blood equivalent equal to or greater than .10%. *Bartolacci, supra.* Accordingly, we view Appellant's argument as nothing more than a challenge to the weight of the conversion evidence, which is a matter left to the trier of fact. *See Commonwealth v. Mongiovi,* 360 Pa.Super. 590, 521 A.2d 429 (1987) (finding any weight to be accorded the breathalyzer test results where the accuracy of the equipment was called into question properly rests with the finder of fact).

¶ 8 Here, as in *Bartolacci* and *Michuck,* the Commonwealth presented evidence that Appellant's blood plasma and not his whole blood was tested, and the jury was informed of this fact. The plasma/serum test result indicated a blood alcohol content of .1403% (140.3 mg/dl). The Commonwealth also introduced evidence of the conversion factor used to convert the plas-

ma level to whole blood. Specifically, Robin Rosler, the interim lab manager, testified that in determining Appellant's whole blood alcohol content, she relied on conversion factors identified in a study conducted by Dr. James C. Garriott. N.T., 7/12/00, at 78–79. She indicated she utilized a range of multipliers from 1.1 to 1.35 in converting the plasma alcohol content into whole blood. In addition, the testimony indicated that use of these conversion factors is standard policy and procedure at Wayne Memorial Hospital. *Id.* at 76–77. Applying this range of conversion factors, Mrs. Rosler determined that Appellant's whole blood alcohol level would lie somewhere between a high of .1275% and a low of .1039%[6]. *Id.* Additionally, the Commonwealth presented the testimony of Dr. DeAngelo who testified that within a reasonable degree of toxicological certainty Appellant's whole blood alcohol level was .119%. *Id.* at 104. After allowing for a 10% standard deviation for the conversion, Dr. DeAngelo testified that Appellant's whole blood alcohol level was between .107% and .131%. *Id.* at 105. In fact, Appellant's own expert agreed that Appellant's whole blood equivalent could be calculated using a conversion factor and further agreed that use of a high/low range was the preferred method. *Id.* at 152–53. As both the high and low range exceeded the legal limit of .10% the evidence was clearly sufficient to sustain Appellant's conviction and was not so deficient so as to render the fact finder's decision based on mere speculation or conjecture.

¶ 9 Judgment of sentence affirmed.

---

6. We note this same range of multipliers was used with approval in *Michuck. See supra,* 686 A.2d at 406 fn. 5.