**COMMONWEALTH of Pennsylvania,**
**Appellant**

v.

**Amy K. BRUGGER, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 23, 2013.
Filed March 25, 2014.

Anthony R. Bowers, Assistant District Attorney, Lebanon, for Commonwealth, appellant.

Amy K. Brugger, appellee, pro se.

BEFORE: BENDER, P.J., WECHT, J., and FITZGERALD, J.*

OPINION BY WECHT, J.:

The Commonwealth appeals from the trial court's December 7, 2012 order. That order denied the Commonwealth's motion *in limine* requesting a pre-trial hearing on the admissibility of Amy K. Brugger ("Brugger")'s blood-alcohol content ("BAC") test results, which were processed by the Good Samaritan Hospital in Lebanon County, Pennsylvania. Following our review of the record, we are constrained to agree that the trial court abused its discretion in denying the Commonwealth's request for such a hearing. Accordingly, we reverse.

The present case arises against the backdrop of a complicated recent history of BAC testing in Lebanon County. The Lebanon County Court of Common Pleas has labored diligently to resolve the admissibility of Good Samaritan Hospital's BAC testing protocol, which is performed on blood serum rather than whole blood.[1]

---

* Former Justice specially assigned to the Superior Court.

1. Indeed, a lengthy series of challenges to the BAC testing at Good Samaritan Hospital previously led the Lebanon County Court of

This is a difficult question that also has arisen in our Court on several occasions and in various forms.

We begin by reviewing our two most recent opinions concerning supernatant blood testing, decisions which this Court issued in close succession. In *Commonwealth v. Haight*, 50 A.3d 137 (Pa.Super.2012), we provided the following discussion of the distinction between whole blood and supernatant samples that are separated from whole blood, and explained why the distinction poses problems for establishing the whole-blood BAC necessary to sustain a conviction for most categories of driving under the influence of alcohol ("DUI")[2] charges:

> In *Commonwealth v. Renninger* [452 Pa.Super. 421], 682 A.2d 356 (Pa.Super.1996), we made it clear that supernatant blood alcohol test results are invalid "unless converting evidence is provided to establish the alcohol content of whole blood." We explained that where blood alcohol testing is performed on only a portion of whole blood, such as plasma, serum, or a supernatant sample,[3] it requires conversion to establish the correlative whole blood test results. *Id.* Recently, in *Commonwealth v. Hutchins*, 42 A.3d 302 (Pa.Super.2012), *appeal de-*

*nied*, [618 Pa. 675], 56 A.3d 396 (Pa. 2012), we expounded on the necessity of whole blood test results as follows:

> The general rule for alcohol[-]related DUI is that only tests performed on whole blood will sustain a conviction under 75 Pa.C.S. § 3802. Thus, evidence of blood serum, plasma or supernatant testing, without conversion, will not suffice. The reasoning for this rule rests on the distinction between whole blood and blood serum:

> > The distinction between whole blood and blood serum is significant. Serum is acquired after a whole blood sample is centrifuged, which separates the blood cells and fibrin, the blood's clotting agent, from the plasma—the clear liquid i[n] the blood serum. When blood serum is tested the results will show a [BAC] which can range from between 10 to 20 percent higher than a test performed on whole blood. The reason for this is because the denser components of whole blood, the fibrin and corpuscles, have been separated and removed from the whole blood, leaving the less dense serum upon which the alcohol level test is performed. The value of the

Common Pleas to implore us to issue a published opinion to clarify whether, and in what form, "converting evidence" is required for supernatant blood testing. The recent cases we discuss *infra* have established that such evidence is required.

**2.** DUI—general impairment does not require BAC evidence to sustain a conviction. *See* 75 Pa.C.S. § 3802(a)(1) ("An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle."); *see generally Commonwealth v. Mobley*, 14 A.3d 887, 890 (Pa.Super.2011).

**3.** "Supernatant" describes a category of blood sample extracted from whole blood, of which there are two relevant kinds, "serum" and "plasma." "Plasma" is "the fluid portion of blood in which particulate components are suspended." The components consist of red corpuscles, white corpuscles[,] and platelets. *Commonwealth v. Wanner*, 413 Pa.Super. 442, 605 A.2d 805, 808 (1992) (footnote omitted; citing Dorland's Illustrated Medical Dictionary (25th ed. 1974)). By contrast, blood "serum" is "blood plasma from which the fibrinogen has been removed in the process of clotting." Fibrinogen is a coagulation factor. *Id.* at 808 n. 5 (citing same). The Good Samaritan Hospital testing protocol at issue in this case concerns blood serum.

[BAC] in the serum is then determined. Because the serum is less dense than whole blood, the weight per volume of the alcohol in the serum will be greater than the weight per volume in the whole blood. Thus, an appropriate conversion factor is required to calculate the corresponding alcohol content in the original whole blood sample.

*Hutchins*, at 309–10 (citations omitted). *See Commonwealth v. Kohlie*, 811 A.2d 1010, 1013 (Pa.Super.2002) (holding that, in order to convict a defendant of DUI under Subsection 3802(b), the Commonwealth cannot rely on the blood serum analysis alone; it must introduce evidence of alcohol by weight in terms of whole blood).

*Haight*, 50 A.3d at 141 (citations modified); *see Commonwealth v. Newsome*, 787 A.2d 1045, 1048–49 (Pa.Super.2001); *Commonwealth v. Michuck*, 454 Pa.Super. 594, 686 A.2d 403, 405–06 (1996); *Commonwealth v. Wanner*, 413 Pa.Super. 442, 605 A.2d 805, 808 (1992); *Commonwealth v. Bartolacci*, 409 Pa.Super. 456, 598 A.2d 287, 288 (1991).

In *Haight*, the defendant claimed that a BAC test performed on a supernatant sample was insufficient as a matter of law to convict him of DUI. Based upon *Renninger*, Haight argued that, because the BAC submitted by the Commonwealth had been measured from a supernatant sample, the Commonwealth was obligated to establish a conversion factor to convert that concentration to its whole-blood equivalent. *Id.* at 140–42, 682 A.2d 356.

The Commonwealth submitted into evidence the expert report of Harry Kamerow, M.D., in which Dr. Kamerow opined that the BAC in the supernatant sample did not differ significantly from the BAC in the whole blood sample. *Id.* at 142, 682 A.2d 356. Dr. Kamerow admitted that clinical chemists had not studied extensively the relationship between ethanol in supernatant and whole blood samples, but maintained that "the community of clinical chemists and toxicologists accept that the ethanol concentration in supernatant is equivalent to the ethanol concentration in whole blood." *Id.* at 143, 682 A.2d 356.

Haight offered the expert testimony of Dr. Joseph Citron to rebut Dr. Kamerow's testimony. Dr. Citron testified that there is no generally accepted "conversion range" for supernatant to whole blood. *Id.* at 143, 682 A.2d 356. However, when questioned further regarding the relationship between ethanol concentrations measured in supernatant samples and the corollary concentrations in whole-blood samples, Dr. Citron opined that a supernatant BAC result of .181% could be converted to a whole-blood BAC of .166%. *Id.* The lab actually had obtained two results from supernatant testing performed on Haight's supernatant sample, .181% and .174%. Deriving the conversion rate suggested by Dr. Citron, *i.e.* .181%/.166% (1.09), and applying that ratio to the lower supernatant test result, .174%, the court calculated Haight's whole-blood BAC to be .158%.[4] *Id.* at 143–44, 682 A.2d 356.

We affirmed the decision of the trial court, citing *Renninger* and *Hutchins*, *supra*. The medical technician who performed the BAC test on Haight's serum sample testified that two supernatant samples were tested, returning in BAC readings of .181% and .174%. Giving Haight the benefit of the doubt, the trial court as-

---

**4.** By our own calculations, we calculate the application of the ratio to result in a BAC of .1596. The source of or reasoning for the discrepancy is unclear, but the result suggests that the trial court, deliberately or not, was more generous to Haight in determining his whole-blood BAC than the stated formula would have dictated, if applied precisely.

sumed that Haight's supernatant BAC was .174%. The trial court, acknowledging Dr. Kamerow's opinion that a supernatant BAC is, in fact, substantially equivalent to a corresponding whole-blood BAC, again gave Haight the benefit of the more favorable value, and converted the supernatant BAC of .174% to a whole-blood BAC of .158% based upon the testimony of Haight's own expert. We deemed this evidence sufficient to sustain Haight's DUI conviction.[5]

In a dissenting opinion, the Honorable Mary Jane Bowes opined that Dr. Citron's testimony was insufficient to establish the requisite conversion factor applied by the trial court. Judge Bowes noted that Dr. Citron specifically rejected the premise that the Lock Haven Hospital test results could be converted in the manner adopted by the trial court. *Id.* at 148, 682 A.2d 356 (Bowes, J., dissenting). He further testified that it would be speculative to determine a whole-blood BAC in this case based upon the test performed by the hospital. *Id.* According to Judge Bowes, Dr. Citron's reluctance to offer a conversion range for Haight's particular blood test, and the lack of a standard policy or protocol employed by the testing hospital to determine a whole-blood BAC based upon a supernatant result, demonstrated that there was no generally accepted conversion factor that could be applied under the circumstances at bar.

Four days after we issued our decision in *Haight,* we decided *Commonwealth v. Karns,* 50 A.3d 158 (Pa.Super.2012). In *Karns,* the defendant challenged the sufficiency of the evidence to sustain his DUI conviction. Like Haight, Karns claimed that his supernatant blood test sample had

not properly been converted to a whole-blood BAC, and therefore was insufficient as a matter of law. *Id.* at 160.

At trial, the Commonwealth called the lab scientist who had prepared and analyzed Karns' blood sample to testify as to how she operated the blood-testing machine, including all relevant calculations and conversions. *Id.* While the scientist had performed several adjustments to Karns' sample to obtain a reliable supernatant BAC, she testified confusingly that she did, and yet did not, apply a conversion factor on the supernatant BAC result (.189%) to determine a whole-blood BAC equivalent. *Compare id.* at 164 (agreeing that the report of a .189% BAC reflected "no computation ... that does any sort of mathematical correction between the supernate to whole blood") *with id.* (agreeing that she obtained a "whole blood ethyl alcohol result of .189%"). Thus, even if a conversion factor had been applied, the effective ratio was one to one, akin to no conversion factor at all. Hence, we concluded that the BAC evidence presented by the Commonwealth was insufficient to sustain Karns' conviction for DUI—highest rate of alcohol. *Id.* at 165.

These authorities provide the decisional background for the case at bar. To understand the appeal before us, by way of further background we must review an *en banc* decision of the Lebanon County Court of Common Pleas that preceded the instant case, because the challenged trial court order in this case expressly was based upon that prior *en banc* opinion.

In *In Re: Commonwealth's Omnibus Request for Motion in Limine* (Charles, J., writing for the court *en banc,* Feb. 1, 2013) ("Omnibus Opinion"), which issued

---

**5.** Thus, in *Haight,* this Court effectively accepted a duly established conversion ratio of supernatant BAC to whole-blood BAC of 1.09. We have approved more conservative ratios

in other cases. *See Michuck,* 686 A.2d 403 (approving 1.18 ratio); *Bartolacci,* 598 A.2d 287 (upholding conviction based on 1.15 ratio).

approximately seven months after we decided *Haight* and *Karns,* the trial court addressed the Lebanon County District Attorney's omnibus motion *in limine* seeking a hearing and order concerning the admissibility of serum BAC testing conducted by Good Samaritan Hospital in eight pending DUI cases involving eight different defendants. *Id.* at 5. In its motion, the Commonwealth averred as follows:

"[S]hould this court [rule] that conver[sion] evidence is necessary, the Commonwealth will present evidence that the conversion ratio is 1:1." (¶ 14 of Cmwlth's Motion). In addition, the Commonwealth stated: "The Superior Court's holding in *Renninger* conflicts with the accepted scientific view concerning the extent to which the alcohol concentration in supernatant reflects the alcohol concentration in whole blood." (¶ 13 of Cmwlth's Motion)

*Id.* at 5–6.

The trial court, *en banc,* issued an opinion denying the Commonwealth's motion *in limine.* Although the trial court was sympathetic toward the Commonwealth's substantive contentions about blood-alcohol testing, its primary concern in denying the motion *in limine* was the procedural problem created by issuing a unitary evidentiary ruling in eight cases at once. *Id.* at 6. The trial court noted that this type of omnibus motion could run afoul of our rules for consolidation of criminal cases, and that additional problems also lurked.

From a legal perspective, consolidation of criminal cases is governed by Pa. R.Crim.P. 582. That rule states:

Defendants charged in separate indictments or informations may be tried together if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.

Pa.R.Crim.P. 582(A)(2). This rule has been liberally applied when co-defendants are charged with Criminal Conspiracy. *See Commonwealth v. Payne,* 760 A.2d 400 (Pa.Super.2000).... However, none of the Defendants in this case are co-conspirators, nor has the Commonwealth alleged that any of the Defendants are charged as part of the same "transaction."

Practical problems also abound with the process proposed by the Commonwealth. For example, evidentiary disputes must be decided within the context of the specific case before the Court. It is nearly axiomatic that every case is different. Were we to undertake a one size fits all approach to an evidentiary dispute, we [would] run the risk that what may work under the facts of one case could create an injustice under the facts of another.

Omnibus Opinion at 8. The trial court also expressed concern over the logistics of the proposed proceeding, pointing out that any Commonwealth witness could be subject to eight different cross-examinations, creating potential conflicts of interest among the eight defendants. To wit, one defendant's sound cross-examination might undermine the theory of another defendant's defense. The trial court additionally commented that, "[t]o the extent that the Lebanon County District Attorney desires a definite pronouncement from this Court that it could rely upon as ongoing precedent, we are simply not able to provide that; only an appellate court could do so." *Id.* at 9. It emphasized that the consolidated form of the action "could ... contravene the precept of Pennsylvania law that prohibits advisory opinions." *Id.* at 8 (citing, *inter alia, Lowther v. Roxborough*

*Mem. Hosp.*, 738 A.2d 480 (Pa.Super.1999)).

After setting forth in detail this independently sufficient basis for denying the Commonwealth's motion for an omnibus hearing, the trial court turned to this Court's case law concerning BAC testing, specifically addressing, *inter alia,* the requisite size of the sample to be tested, *id.* at 10–11, and this Court's case law (as well as several of its own decisions) addressing various aspects of the conversion evidence inquiry. *Id.* at 11–17 (citing, *inter alia, Karns, Haight, Michuck, Renninger, supra* ). The trial court acknowledged that there remain several areas of uncertainty relative to Good Samaritan Hospital's testing protocol for supernatant samples:

> [O]pen questions remain in Lebanon County regarding the BAC testing process. We still do not know for sure whether a mathematical reduction of the [Good Samaritan Hospital] supernatant testing result will be required. Likewise, we do not know [whether] testimony from an expert chemist ... in support of a 1:1 ratio between supernatant testing and [whole-]blood alcohol results will be deemed viable.... [W]e freely acknowledge that a definitive answer to these questions must await a published proclamation from the Pennsylvania Superior Court and we still anxiously desire [that] either the Commonwealth or some Defendant will provide the Superior Court with the opportunity to issue a binding published Opinion.

*Id.* at 19. Ultimately, the *en banc* court rejected the Commonwealth's omnibus motion in limine.[6]

■ Finally, we turn our attention to the case at hand. Brugger was charged with two counts of DUI, one count of careless driving, and one count of operating a vehicle with insufficient rear lighting.[7] Brugger waived appearance at her arraignment and entered a plea of not guilty. In the case's present posture, we have no record beyond the affidavit of probable cause supporting the criminal complaint, which contains the following allegations:

On December 31, 2011, Trooper Cristopher Graf was traveling east on Chestnut Street in Lebanon when he observed a vehicle stopped in the middle of the block for no apparent reason. Police Criminal Complaint at 5. Trooper Graf noticed the left rear brake light was inoperative, so he activated his emergency lights and conducted a traffic stop. *Id.*

Trooper Graf detected a strong odor of alcohol emanating from the vehicle. Trooper Graf observed that Brugger's eyes were bloodshot and glassy, and that her speech was slurred. Brugger submitted to field sobriety tests, during which she exhibited signs of intoxication. *Id.* at 6. Brugger then submitted to a breath test, which indicated the presence of alcohol. *Id.* Brugger was taken into custody and transported to Good Samaritan Hospi-

---

**6.** On February 26, 2013, at 377 MDA 2013, the Commonwealth filed a notice of appeal of the *en banc* trial court's refusal to hold the requested hearing, certifying that the court's interlocutory order would terminate or substantially handicap the prosecution, and therefore should be allowed. *See* Pa.R.A.P. 311(d). On April 15, 2013, this Court issued a rule to show cause why the appeal should not be quashed as an interlocutory order that fell outside the ambit of Rule 311(d). On May

7, 2103, after reviewing the Commonwealth's response, this Court determined that it lacked jurisdiction and quashed the Commonwealth's interlocutory appeal. The proceedings at 377 MDA 2013 have no bearing on the case *sub judice.*

**7.** *See* 75 Pa.C.S. §§ 3801(a)(1) (DUI—general impairment), (b) (DUI—high rate of alcohol); 3714(a); and 4303(b), respectively.

tal for a supernatant chemical blood test. The test indicated that Brugger had a blood alcohol level of .102%. *Id.*

After a series of procedural delays, Brugger's bench trial finally was scheduled for February 1, 2013. On January 22, 2013, the Commonwealth filed a motion *in limine* requesting a hearing to determine the admissibility of the supernatant BAC results obtained in this case. On January 23, 2013, the trial court denied the Commonwealth's request for a pre-trial hearing.

The trial court explained its ruling by reference to the Omnibus Opinion:

> The Commonwealth has presented a similar Omnibus Motion in Limine regarding several Driving Under the Influence cases, not including the instant case. This Court *En Banc* has already considered and issued an opinion on the admissibility of blood alcohol test results in Lebanon County. In accordance with that opinion, we find no error in this Court's denial of the Commonwealth's Motion in Limine.

Trial Court Opinion, 3/27/2013, at 4.

On January 31, 2013, the Commonwealth filed a timely notice of appeal, and certified that the trial court's order substantially handicaps the prosecution pursuant to Pa.R.A.P. Rule 311(d) ("In a criminal case, . . . the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution."). The pretrial suppression of evidence critical to the prosecution is an appropriate basis for a Rule 311(d) appeal. *See Commonwealth v. Arthur,* 62 A.3d 424 (Pa.Su-

per.2013).[8] Before this Court, the Commonwealth raises the following issue for our consideration: "Is the Commonwealth entitled to a pre-trial hearing on the admissibility of evidence as a matter of law." Brief for Commonwealth at 4.

The standard for determining whether the trial court must conduct a pre-trial evidentiary hearing is as follows:

> **(a) In General.** The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege.
>
>     \*    \*    \*
>
> **(c) Conducting a Hearing So That the Jury Cannot Hear it.** The court must conduct any hearing on a preliminary question so that the jury cannot hear it if:
>
> > (1) the hearing involves evidence alleged to have been obtained in violation of the defendant's rights;
> >
> > (2) a defendant in a criminal case is a witness and so requests; or
> >
> > (3) justice so requires.

Pa.R.E. 104. Thus, Rule 104(c)(3) calls for a hearing on the admissibility of evidence outside the hearing of the jury when justice so requires.

Our research has disclosed no clear articulation of the applicable standard of review. The Commonwealth submits that it was entitled to a hearing as a matter of law, and that the *de novo* standard of review we apply to questions of law should apply. Brief for Commonwealth at 3. However, the determination whether "justice" requires a hearing, which appears to be the most on-point basis for the hearing

---

8. On February 5, 2013, the trial court directed the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On February 12, 2013, the Commonwealth timely filed its rule 1925(b) statement.

the Commonwealth seeks, necessarily implies a degree of trial court discretion in assessing the requirements of justice in a particular case. This would militate in favor of the application of our more deferential abuse of discretion standard of review. *Cf.* Pa.R.Crim.P. 577 (leaving to the trial court's discretion the determination of whether an evidentiary hearing is required to address a motion). However, we need not resolve this question: Even if we found that the more deferential standard of review applied, we would rule in favor of the Commonwealth under the circumstances of the case, upon the basis that the trial court abused its discretion in denying the Commonwealth its requested hearing.

We are constrained to differ with the trial court's reliance upon the Omnibus Opinion in denying the Commonwealth its requested hearing in this case. First, the Omnibus Opinion, while providing a trenchant analysis of Pennsylvania law regarding supernatant testing, ultimately rested upon the problematic procedural posture of the omnibus motion there in question.[9] Second, by ruling in this fashion, and implying that it would continue to do so in future cases, the trial court unwittingly confounded that court's own *en banc* plea for this Court's guidance. *See* Omnibus Opinion at 19 ("[W]e still anxiously desire that either the Commonwealth or some Defendant will provide the Superior Court with the opportunity to issue a binding published Opinion.").

In its motion for a hearing in the instant case, the Commonwealth made the following proffer:

15. A panel of the Superior Court held in *Renninger*, 682 A.2d 356, that supernatant blood testing requires conver[sion] evidence.

16. The Superior Court affirmed this decision in *Karns*, 50 A.3d 158, when it held that the testimony of a medical lab scientist who had prepared and analyzed the blood alcohol content was insufficient to demonstrate a scientifically reliable conversion factor to calculate the corresponding BAC in a whole-blood sample.

17. Pursuant to the *Karns* decision, the Commonwealth must now present additional testimony to establish a "scientifically reliable conversion factor" in order for the results of supernatant blood testing to be admissible.

18. The Commonwealth respectfully requests a hearing on the admissibility of blood alcohol test results and the required conver[sion] evidence as it pertains to the blood tests from Good Samaritan Hospital.

19. To establish the converting evidence required by *Renninger*, the Commonwealth intends to call ... Jeffery Shoemaker, Ph.D.[,] who is currently the Director of the Division of Chemistry and Toxicology at the Department of Health's Bureau of Laboratories.

20. At the conclusion of such testimony, the Commonwealth will request a pre-trial determination regarding the admissibility of the [BAC] test results. . . .

Motion *in Limine*, 1/22/2013, at 3–4 (citations modified).

9. Although it acknowledged the perils associated with advisory opinions, Omnibus Opinion at 8 (citing, *inter alia*, *Gulnac v. S. Butler Sch. Dist.*, 526 Pa. 483, 587 A.2d 699 (1991)), the *en banc* trial court went on to discuss case law immaterial to its ultimate basis for decision, and even went so far as to enumerate various legal conclusions immaterial to its disposition. *See* Omnibus Opinion at 18–19. It is difficult not to read this lengthy discussion, as well as the majority of the court's conclusions of law, as being advisory in nature.

As the *en banc* trial court acknowledged in its Omnibus Opinion, while Pennsylvania law manifestly requires the use of a reliable conversion factor to infer the requisite whole-blood BAC from supernatant BAC results, the source, content, and rigor required of such testimony remain less than clear. As the trial court also recognized, these questions can only be resolved through the further development of the applicable standards by this Court and our Supreme Court. However, like the trial court, we cannot issue advisory opinions. We may decide only the cases that come before us. If the trial court denies the Commonwealth the opportunity to present evidence and obtain a ruling on the admissibility of supernatant blood-test results in this case, when the proffer alludes to the sort of evidence our case law has deemed adequate to sustain DUI convictions, merely by citation to a prior *en banc* opinion of the trial court rejecting a multi-case omnibus challenge on logistical grounds inapplicable to this case, it is unclear when the court might rule substantively on the question. And should it not so rule, in this case or another, the precedential vacuum of which it complains will continue unabated. For the foregoing reasons, even assuming, *arguendo,* the application of a deferential standard of review, we hold that the trial court abused its discretion in denying the Commonwealth a pre-trial hearing on the admissibility of its BAC conversion evidence under the circumstances of this case.

Order reversed. Case remanded. Jurisdiction relinquished.