J-A09024-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ALBERTO R. GARCIA | |
| Appellee | No. 3503 EDA 2012 |

Appeal from the Order November 26, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0014673-2011

BEFORE: BOWES, J., OTT, J., and JENKINS, J.

MEMORANDUM BY OTT, J.:                    **FILED JULY 29, 2014**

The Commonwealth of Pennsylvania appeals from the order entered on November 26, 2012, in the Court of Common Pleas of Philadelphia County, suppressing physical evidence, specifically one kilogram of cocaine, found in Defendant Alberto R. Garcia's possession. Law enforcement personnel searched Garcia, with his consent, after he picked up luggage following his arrival at Philadelphia International Airport on a flight from Puerto Rico. The Commonwealth claims the trial court erred in classifying the encounter between law enforcement and Garcia as an investigative detention unsupported by reasonable suspicion. Following a thorough review of the

Commonwealth's brief,[1] the certified record, and relevant law, we reverse and remand for further proceedings.

Initially, we note,

> [i]n a criminal case, ... the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution."). The pretrial suppression of evidence critical to the prosecution is an appropriate basis for a [Pa.R.A.P.] Rule 311(d) appeal.

***Commonwealth v. Brugger***, 88 A.3d 1026, 1033 (Pa. Super. 2014)(citation omitted). The Commonwealth has properly certified the order under appeal will substantially handicap the prosecution.

The applicable standard of review when the Commonwealth appeals from a suppression order is as follows:

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

***Commonwealth v. Newman***, 84 A.3d 1072, 1076 (Pa. Super. 2014)(citation omitted).

_____

[1] Garcia did not file an Appellee's Brief.

We recite the factual history as related by the trial judge in her Pa.R.A.P. 1925(a) opinion.

> At the Suppression Hearing, (the "Hearing"), the Commonwealth presented the testimony of arresting agent, DEA Interdiction Unit Agent Alan Basewitz and Trooper Alfredo [sic] Moreno[2] of the Mass Transportation Interdiction Task Force Group. Viewing the evidence in the light most favorable to the defendant, as the motion winner, the testimony of these witnesses established the following. On October 31, 2011, Agent Basewitz arrived at the Philadelphia International Airport after receiving information from DEA San Juan reporting two "suspicious individuals," traveling on one-way tickets possibly purchased with cash. Agent Basewitz testified that the Interdiction Unit was provided with a general description of the individuals, which included information based on their clothing, physical makeup, and age.

> While at Philadelphia International Airport, Agent Basewitz received information from DEA Special Agent Eric Hill that he had observed defendant deplane and that a female who was later identified by the name of Vargas was following him. Defendant was also observed walking ahead of Ms. Vargas while glancing back and conversing. Once inside the terminal, Agent Basewitz, based on information received by Special Agent Hill observed the defendant and Vargas. After observing defendant take a piece of luggage off of the carousel, the agent began to follow both defendant and Ms. Vargas as they walked toward the direction of the airport exit. At this point, Special Agent Brian Daurity then approached Ms. Vargas while Agent Basewitz approached defendant. The defendant and Ms. Vargas were approximately 15 or 20 feet apart at this time. Agent Basewitz testified that upon approaching defendant, he displayed his paper credentials, identified himself as a police officer, and asked defendant if he could briefly speak with him. At the time that the conversation took place defendant was not in handcuffs.

> While Agent Basewitz stopped the defendant, Trooper Moreno was acting as an interpreter for Special Agent Brain Daurity who was engaged in an encounter with Ms. Vargas. While Agent

---

[2] The notes of testimony indicate the Trooper's name is Wilfredo Moreno.

Basewitz was speaking with defendant he observed officers conduct a search of the bag that Ms. Vargas had claimed, which revealed a kilo of cocaine that had been removed from a Lite Brite toy. Trooper Moreno then came to where Agent Basewitz had stopped defendant in order to aid the agent in conducting a translation interview in Spanish. He identified himself as a law enforcement officer and displayed his task force credentials for defendant.

When questioned about Ms. Vargas and why he was in Philadelphia, defendant replied that he had just met Ms. Vargas that day at the baggage claim area and that he was in Philadelphia to visit his aunt and uncle. [sic[3]] Defendant also stated that he had packed his own luggage, that nobody had solicited him to carry anything, and that the items in his bag belonged to him. During the course of the translation interview defendant was asked for permission to search his bag and his person to which he replied, "sure, go ahead" in Spanish. Defendant was placed in handcuffs after the discovery of the cocaine in Ms. Vargas'[s] bag.[4]

Trial Court Opinion, 7/03/2013, at 2-3 (citations to record omitted).

Based upon the preceding information, the trial court determined that Garcia had been subject to an investigative detention that was unsupported by a reasonable suspicion of any criminal activity and accordingly, the

_____

[3] The notes of testimony contain no reference to an uncle.

[4] Here, the trial court cites to pages 36 and 72 of the notes of testimony. However, neither page supports this statement. Our review of the certified record shows that page 36 contains no reference to handcuffs or Ms. Vargas. Testimony by Trooper Moreno on page 72 indicates only that Garcia was not in handcuffs as he was being questioned. Agent Basewitz testified he did not handcuff Garcia until he found the cocaine on him. *See* N.T. Hearing, 11/26/2012, at 33. Because the cocaine was found on Garcia after it was found on Vargas, the trial court's statement is true, but Garcia was not placed in handcuffs immediately after the drugs were found in Vargas's bag, as might be suggested by the trial court's characterization.

evidence subsequently obtained was fruit of the poisoned tree. However, the Commonwealth argues Garcia was subjected only to a mere encounter.

> Our courts have long recognized three levels of interaction that occur between the police and citizens that are relevant to the analysis of whether a particular search or seizure conforms to the requirements of U.S. CONST. amend. IV and PA. CONST. art I, § 8.
>
> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Phinn*, 761 A.2d 176, 181 (Pa. Super. 2000) (*quoting* *Commonwealth v. Ellis*, 541 Pa. 285, 662 A.2d 1043, 1047 (1995) (citations and footnotes omitted)).

> [I]n assessing the lawfulness of citizen/police encounters, a central, threshold issue is whether or not the citizen-subject has been seized. Instances of police questioning involving no seizure or detentive aspect (mere or consensual encounters) need not be supported by any level of suspicion in order to maintain validity. Valid citizen/police interactions which constitute seizures generally fall within two categories, distinguished according to the degree of restraint upon a citizen's liberty: the investigative detention or *Terry* [*v. Ohio*, 392 U.S. 1 (1968)] stop, which subjects an individual to a stop and a period of detention but is not so coercive as to constitute the functional equivalent of an arrest; and a custodial detention or arrest, the more restrictive form of permissible encounters. To maintain constitutional validity, an investigative detention must be supported by a reasonable and articulable suspicion that the person seized is engaged in criminal activity and may continue only so long as is necessary to confirm or dispel such suspicion; whereas, a custodial detention is legal only if based on

probable cause. To guide the crucial inquiry as to whether or not a seizure has been effected, the United States Supreme Court has devised an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave. In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained. In making this determination, courts must apply the totality-of-the-circumstances approach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred.

*Commonwealth v. Strickler*, 563 Pa. 47, 757 A.2d 884, 889-90 (2000)(internal citations and footnotes omitted).

*Commonwealth v. Lyles*, 54 A.3d 76, 79-80 (Pa.Super. 2012)

*Commonwealth v. Williams*, 73 A.3d 609, 613-14 (Pa.Super. 2013), *appeal denied*, 87 A.3d 320 (Pa. 2014).

With the facts and standards in place, we turn to the trial court's legal analysis. In determining Garcia was subject to an investigative detention, the trial court stated, *in toto*, in its Pa.R.A.P. 1925(a) opinion:

In the case at hand, there clearly was an investigative detention. To determine whether or not a seizure has taken place for the purposes of an investigative detention, the United States Supreme Court "has devised an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave." *Com. v. Strickler*, 757 A.2d 884, 889 (Pa. 2000). When evaluating the circumstances, the primary focus is on whether by means of physical force or show of authority, the citizen's movement was restrained in some way. *Id*. The agent in this case observed the defendant at the baggage claim area and subsequently stopped him before he exited the airport. While stopped, [the] defendant was subjected to a translation interview with the help of a Spanish speaking trooper that was composed of roughly 10 to 15 questions, as well as a search of both his person and his baggage. Additionally, both the agent

and the trooper were standing in front of the defendant at a distance of approximately one arm's length. A reasonable person would not have believed that he was free to leave. Moreover, although [the] defendant was not physically restrained at the time, there was undoubtedly a show of authority by both officers who displayed their law enforcement credentials when defendant was stopped. As a reasonable person, defendant did not feel free to leave under the circumstances, and the agents had in fact engaged him in an investigative detention.

Trial Court Opinion, 7/03/2013, at 5-6. Based upon our review of the certified record, we conclude the trial court erred as a matter of law in classifying the encounter with Garcia as an investigative detention.

The trial court's determination of investigative detention was based on three factors. First, the police talked to Garcia. Second, they identified themselves as police. Third, they stood in front of Garcia. These factors do not lead to the conclusion that Garcia was involuntarily detained. Rather, they are the definition of a mere encounter.

The police need no level of suspicion to initiate a mere encounter. *See Williams*, *supra*. Therefore, Agent Basewitz was allowed to approach Garcia and ask him if he would answer a few questions. Accordingly, talking to Garcia does not lead to the conclusion Garcia was inappropriately stopped.

The police identified themselves by showing their credentials. While the trial court classifies this action as a show of authority that led Garcia to believe he could not leave, identifying one's self as a law enforcement officer, here by showing an ID card, would seem to be part and parcel of

asking the person if he or she would answer a few questions. For the conversation to be voluntary, the citizen in question should be aware he or she is talking to law enforcement personnel.[5] Therefore, the police must identify themselves. The trial court puts forth no rationale, nor do we see any reason, why confirming one's identity to a person by showing an ID card equates to an improper show of authority.

Finally, the police officers, Agent Basewitz and the translator, Trooper Moreno, stood in front of Garcia. However, as the trial court found, Garcia was not physically restrained and there is no indication that they barred Garcia or that he could not have simply walked around the men, had he been so inclined. Additionally, Agent Basewitz and Trooper Moreno were talking to Garcia. The most logical place for them to be standing would be in front of Garcia.

Viewing the evidence presented at the hearing in the light most favorable to Garcia, as verdict winner, we nonetheless believe the instant matter is very similar to the situation presented in **Commonwealth v. Dowds**, 761, A.2d 1125 (Pa. 2000), in which our Supreme Court determined the defendant was subjected to a mere encounter.

_____

[5] The voluntary answering of questions is part of the mere encounter. **Commonwealth v. Jones**, 874 A.2d 108, 116 (Pa. Super. 2005).

> The officers who approached Dowds were in plain clothes, did not display weapons, identified themselves, explained their duties at the airport, and merely requested ticket and identification information, which Dowds agreed to provide. Dowds was not confronted by a large number of police officers or interrogated regarding narcotics possession, and as she testified, the officers' demeanor was polite.

***Commonwealth v. Dowds***, 761 A.2d 1125, 1130 (Pa. 2000).

Instantly, the trial court made no specific findings regarding many of the factors cited in ***Dowds***. We are not a fact-finding court, but our review of the certified record shows uncontradicted testimony that no weapons were displayed. The record infers Agent Basewitz and Trooper Moreno were in plain clothes. Testimony of the two men indicates the conversation with Garcia was civil in tone. Garcia was not surrounded by officers; the only reason Trooper Moreno was present was to allow Garcia to converse in Spanish. There is no testimony that Garcia was asked about drugs.

In light of the above, we conclude that the trial court committed an error of law in classifying the contact between Garcia, Agent Basewitz and Trooper Moreno as an investigative detention unsupported by a reasonable suspicion of criminal activity.[6] Accordingly, the trial court erred in granting Garcia's motion to suppress the evidence obtained as a result of the consent search.

_____

[6] Although we have determined the contact with Garcia was a mere encounter, it is apparent that, at the latest, the police had reasonable suspicion to investigatively detain Garcia after drugs were found in Vargas's possession.

Order granting suppression of evidence is reversed. This matter is remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/29/2014