J-S30036-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TIMOTHY A. EMIGH, JR. | |
| Appellant | No. 1041 MDA 2013 |

Appeal from the Judgment of Sentence May 9, 2013
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0000954-2012

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMES R. STAHL | |
| Appellant | No. 1611 MDA 2013 |

Appeal from the Judgment of Sentence April 16, 2013
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0000680-2011

BEFORE:  BENDER, P.J.E., MUNDY, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                **FILED AUGUST 26, 2014**

Appellants Timothy A. Emigh, Jr. and James R. Stahl (collectively "Appellants") appeal from their judgments of sentence.  We reverse.

Appellants were convicted of violating 75 Pa.C.S. § 3802(a)(1)[1] and (c).[2] Section 3802(c) provides: "An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle." To establish a conviction under § 3802(c), the Commonwealth must establish the defendant had a blood alcohol content of 0.16% or higher. *Id.* This Court has found that the blood alcohol content refers to a test of the defendant's whole blood. *See, e.g., Commonwealth v. Wanner*, 605 A.2d 805 (Pa.Super.1992) ("the statute requires a 'whole blood' analysis"); *Commonwealth v. Bartolacci*, 598 A.2d 287, 288 (Pa.Super.1991) ("Where a test is performed on blood serum rather than whole blood, the fact finder must be informed of this and must be provided with evidence of the alcohol by weight in the defendant's blood in order to properly sustain a conviction based upon a violation of § 3731"). If the

_____

[1] Section 3802(a)(1) provides: "An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle."

[2] Although the cases have been consolidated on appeal, the facts resulting in the convictions did not arise from the same circumstances and Appellants were not co-defendants.

Commonwealth tests any other blood aspect, including serum,[3] plasma,[4] or supernatant,[5] the Commonwealth must present evidence of a conversion ratio to establish the blood alcohol content. **Commonwealth v. Renninger**, 682 A.2d 356, 362 (Pa.Super.1996) (finding, as with serum and plasma, supernatant testing is invalid unless the Commonwealth provides converting evidence to establish the alcohol content of whole blood).

## I.    Commonwealth v. Daughenbaugh

On October 1, 2012, the Honorable Bradley P. Lunsford of the Court of Common Pleas of Centre County issued an opinion and order in seven separate cases. **Commonwealth v. Daughenbaugh**, No. CP-14-CR-1311-2010 (C.P. Centre, Oct. 1, 2012). The Commonwealth had filed a motion in limine seeking to introduce evidence of the blood alcohol content test results obtained for the seven defendants at Mount Nittany Medical Center in State College, Pennsylvania. Mount Nittany performed the testing for the blood

---

[3] "Serum is acquired after a whole blood sample is centrifuged, which separates the [ ] blood cells and fibrin, the blood's clotting agent, from the plasma-the clear liquid i[n] the blood serum." **Commonwealth v. Karns**, 50 A.3d 158, 161-62 (Pa.Super.2012) (quoting **Commonwealth v. Hutchins**, 42 A.2d 302, 310 (Pa.Super.2012)).

[4] "Plasma" is defined as "the fluid portion of blood in which particulate components are suspended." **Commonwealth v. Wanner**, 605 A.2d 805, 807-08 (Pa.Super.1992).

[5] This Court has defined "supernatant" as "the usu[ally] clear liquid overlying material deposited by settling, precipitation, or centrifugation." **Renninger**, 682 A.2d at 362 n. 4 (citation omitted).

alcohol content on supernatant using the Dimension RXL Clinical Chemistry Analyzer built by the Siemens Corporation.

In **Daughenbaugh**, the court heard testimony from experts and concluded the results obtained using a Siemens Dimension on supernatant are comparable to the results obtained using headspace gas chromatography.[6] It granted the Commonwealth's motion in limine, finding a conversion factor was not needed and finding the Commonwealth could meet the converting requirement of **Renninger**, 682 A.2d 356, and its progeny by presenting evidence of a 1:1 conversion ratio.

## II.    Factual Background for Stahl and Emigh

### A.    James R. Stahl

On December 29, 2010, Stahl was stopped for suspicion of drunken driving. On January 5, 2011, he was charged with violating 75 Pa.C.S. § 3802 (a)(1) and (c).

On February 7, 2013, the Commonwealth filed a "Motion in Limine for the Admission of Evidence (Lab Technician Testimony Concerning 'Converting Evidence')." This motion requested that the trial court adopt the reasoning of **Daughenbaugh** and order that a conversion factor of 1:1 would satisfy the Commonwealth's burden. Stahl also filed motions related

_____

[6]    "Gas chromatography/mass spectrometry is considered the "gold standard" of tests within the forensic drug testing field." Major David Edward Coombs, **United States v. Blazier**: **So Exactly Who Needs An Invitation to the Dance?**, 2010-JUL Army Law. 15, 19 (Army Lawyer, July 2010).

to the conversion ratio.[7]  On February 12, 2013, without a hearing,[8] the Honorable Thomas King Kistler granted the Commonwealth's motion.  Order, **Commonwealth v. Stahl**, No. CP-14-CR-680-2011 (C.P. Centre Feb. 12, 2013).  The court stated:

> The issue raised in this Motion is nearly identical to those issues raised in several cases heard by the Honorable Bradley P. Lunsford over a period of several months.  The Court hereby adopts the sound reason and conclusion of the Honorable Bradley P. Lunsford in his October 1, 2012, Opinion in [**Daughenbaugh**].  At the trial in the present case, the Commonwealth shall be permitted to meet the requirements of [**Renninger**] with evidence of a 1:1 conversion ratio for the alcohol concentration result from the chemical test run on a sample of the Defendant's blood.

Prior to trial, the court stated:

> My ruling is that we're not going to -- in Mr. Stahl's case and every other case, we're not going to reinvent the

---

[7] Stahl filed the following motions:  (1)  Motion to Preclude Commonwealth From Arguing That Conversion is Not Necessary Per the Doctrine of Stare Decisis; (2) Motion to Dismiss Any Commonwealth Motion in Limine Should They Ask This Court to Allow Them to Not Convert Supernatant Test Results to a Whole Blood Equivalent Because It Asks For This Court to Commit an Abuse of Discretion; (3) Motion For This Court to Apply Frye Law to Any Claim the Commonwealth May Make to Either No-Conversion is Necessary or to Any Conversion Factor They May Claim at Trial; and (4) Motion to Preclude Any Hearing on a Motion in Limine That the Commonwealth May File to Have This Court Decide Conversion Is Not Necessary.

[8] The Commonwealth's motion states the parties agree that the court could consider as evidence the notes of testimony from the **Daughenbaugh** proceedings.   Motion in Limine for the Admission of Evidence (Lab Technician Testimony Concerning "Converting Evidence").   Stahl does not dispute this.

scientific record that was created in front of Lunsford, and so I am adopting the scientific foundation of that and I'm adopting those numbers. Once I do that, the question is who is qualified to introduce it. If the two of you stipulate that it's a one-to-one, then we don't have to worry about it, same as if you stipulate that the BAC is .248 or whatever it was. I forget. Then we don't even need a lab tech. For the purpose of today I'm going to permit, and you will put your objection on the record -- I'm going to permit the lab technician to say that I'm trained in the use of this machine. There is no conversion factor. The conversion factor that we use is essentially one-to-one. I'm going to permit that testimony to come in from that person, and you will have your issue preserved, and I will read this instruction.

N.T., 2/14/2013, at 8-9.

At trial, the lab technician testified that the conversation ratio was 1:1 and the 1:1 ratio was generally accepted in the scientific community. N.T., 2/14/2013, at 24. Stahl attempted to cross-examine the lab technician regarding how he conducted the test and the conversion factor. N.T. 2/14/2013, at 21, 30, 57. For example, Stahl questioned the technician as follows:

Q: Okay. I'll come back to that in a second. Let's go over it now. On this document it says testing performed on whole-blood specimen. That's not correct?

A. It's performed on the supernatant of whole blood after it's been treated with trichloroacetic acid ["TCA"].

Q. Whole blood is defined medically and in the scientific realm as blood to which none of the elements have been removed, correct?

A. Correct.

Q. Briefly, to go over the process, your procedures are to take half a milliliter/50 microliters, correct?

- 6 -

A. Correct.

Q. Of trichioroacetic acid?

A. Correct.

Q. Mix it with a half a milliliter of the original whole blood sample?

A. Correct.

Q. All right. And then you centrifuge it?

A. Correct.

Q. And then after centrifugation -- I'm going to show you what is listed as Defense Exhibit 7. This is --

. . .

Q. After all that, is this what the test tube looks like after treated with TCA and after you centrifuge the blood?

A. Yes.

Q. Okay. I showed you this earlier and you have seen it. Now, this dark spot on the bottom -- sorry it's black-and-white -- it is called the precipitate, right?

A. Correct.

Q. Looks like -- so right here, this is the precipitate. It's like a red bullet at the bottom of the test tube?

A. Correct.

Q. And on the top, that's what you referred to a supernatant?

A. Correct.

Q. Supernatant is nothing more than the generic term for the liquid on top of the solids after centrifugation?

A. You're asking me that?

Q. Yes.

A. Yes.

Q. And it has to be clear to go into the machine.

A. (No response)

Q. For the analysis of this supernatant?

A. Yes.

. . .

Q. Okay. Now, you were asked earlier about did you do any conversion. You stated it's your opinion that it's the same stuff. Whatever goes into this machine and you get a result is equal to what a whole-blood sample result would be. They're the same thing, in your opinion?

A. Correct.

MR. MCGRAW: Objection. That question is misleading, Your Honor.

MR. MANCHESTER: How?

MR. MCGRAW: It was not cast in terms of an opinion. The rule provides that an expert, a person with specialized knowledge, may testify in the form of an opinion or otherwise, and it was the "or otherwise" that I had him testify to. I did not elicit an opinion from him. There's a difference between the two.

MR. MANCHESTER: So he's not an expert now, is what the Commonwealth is saying?

THE COURT: He's an expert witness, but he said it was in response to a fact question and not an expert question.

MR. MANCHESTER: The fact -- I'm sorry. I didn't mean to cut you off.

THE COURT: No. Go ahead.

BY MR. MANCHESTER:

Q. Factually, you consider the results from this machine to be the same as from a machine that tests whole blood without removing the solids, yes or no?

A. Yes.

Q. Okay. This one-to-one number that was mentioned by the Commonwealth, that is just -- that makes no sense,

because if something is the same, you don't need to convert it, correct?

A. Correct.

Q. All right. If you have a watermelon and a watermelon, you're not going to change one watermelon to another watermelon, because it's already a watermelon?

A. Correct.

Q. So one-to-one doesn't really exist, because you don't convert if something is the same, true?

A. True.

N.T. 2-14-2013, at 30-34, 57-59.

On February 14, 2013, a jury found Stahl guilty and, on April 16, 2013, the trial court sentenced him. Stahl filed post-sentence motions, which the court denied. On September 4, 2013, Stahl filed a notice of appeal and a concise statement of matters complained of on appeal. The court issued a 1925(a) opinion.

### B. Timothy R. Emigh, Jr.

On April 14, 2012, Emigh was stopped for suspicion of drunken driving. On April 17, 2012, the Commonwealth charged Emigh with violating 75 Pa.C.S. § 3802(a)(1) and (c). On February 21, 2013, the Commonwealth filed a Motion in Limine for the Admission of Evidence (Lab Technician Testimony Concerning "Converting Evidence"). Emigh also filed multiple motions related to converting evidence.[9] The Honorable Jonathan D. Grine

_____

[9] Emigh filed the following motions: (1) Motion to Preclude Commonwealth From Arguing That Conversion is Not Necessary Per the Doctrine of Stare
*(Footnote Continued Next Page)*

held a hearing on February 25, 2013. Emigh agreed that the court could consider the transcript from the ***Daughenbaugh*** hearing. N.T., 2/25/2014, at 6. The trial court found:

> [T]he issue raised in these Motions is nearly identical to those issues raised in several cases heard by the Honorable Bradley P. Lunsford over a period of several months . . . . . Therefore, the Court hereby adopts the sound reasoning and conclusions of the Honorable Bradley P. Lunsford in his October 1, 2012 Opinion in [***Daughenbaugh***].
>
> At trial in the present case, the Commonwealth shall be permitted to meet the requirements of [***Renninger***] with evidence of a 1:1 conversion ratio for the alcohol concentration result from the chemical test run on a sample of the Defendant's blood.

Order, 2/27/2013.

At trial, Emigh's counsel attempted to cross-examine the Commonwealth's witness regarding her knowledge of the 1:1 conversion ratio used and the methodology used to determine the ratio. The Commonwealth, however, stated it was not presenting an expert as to the

*(Footnote Continued)* ─────────────

Decisis; (2) Motion to Dismiss Any Commonwealth Motion in Limine Should They Ask This Court to Allow Them to Not Convert Supernatant Test Results to a Whole Blood Equivalent Because It Asks For This Court To Commit An Abuse of Discretion; (3) Motion to Preclude Any Testimony As to No Conversion Is Necessary For Supernatant Tests or That Said Conversion Rate Is 1:1; (4) Motion to Preclude Any Hearing on a Motion in Limine That the Commonwealth May File To Have This Court Decide Conversion Is Not Necessary; and (5) Motion For Court to Provide Defendant With a Written Opinion That Includes Case Law Analysis of Any Decision This Court Makes on the Instant Motion or Any Motion the Commonwealth Files Regarding Conversion Not Being Necessary.

conversion ratio, and repeatedly objected to defense questions that allegedly sought expert opinion. ***See, e.g., id.***, at 72-73 (objecting because technician was not a medical or scientific expert); 91-92 (objections to questions regarding the conversion ratio and methodology used to obtain the ratio). The court sustained the objections. ***Id.*** The following exchange occurred during cross-examination of the lab technician:

Q. All right. You did not test whole blood in that machine?

A. We started with whole blood.

Q. You started with it. Okay. Would you agree with me that the medical and scientific definition of whole blood is blood to which none of the elements have been removed?

MS. GILLETTE-WALKER: Objection, Judge. She's not a medical expert nor is she a scientific expert. He's asking her for an opinion that's outside of the scope of her testimony today.

THE COURT: Sustained.

BY MR. MANCHESTER:

Q. Now, blood comes out of your body. You have seen blood that actually comes out of a person's body?

A. Yes.

Q. All right. It has blood cells in it, platelets? You have to say yes.

A. Yes.

Q. Platelets?

A. Yes.

Q. Clotting factors?

A. Yes.

Q. A whole bunch of other solid material?

A. Yes.

Q. All right. As a medical technologist, are you told or trained on what the definition of whole blood is?

A. Yes.

Q. What is whole blood?

A. It's, it has the red cells still in it. It has all of the things that you just mentioned in it. It also has plasma, serum in it.

Q. Plasma and serum are the liquids portions of one's blood?

A. Yes.

Q. Without the solids in it?

A. Correct.

Q. Plasma actually, just to be correct, has the fibrinogen and the clotting factor?

A. Yes.

Q. The plasma and serum are really no different?

A. Correct.

Q. All right. So you did not test whole blood to determine the whole content of my client's sample?

A. We –

Q. Yes or no?

A. Yes.

Q. You did?

A. We started with the whole blood.

Q. But you took out the solids before it went into the machine, right?

A. Yes.

Q. What went in the machine was not whole blood, correct?

A. Correct.

. . .

Q. All right. You have no scientific training on the issues of conversion; do you not?

MS. GILLETTE-WALKER: Objection. It's irrelevant.

THE COURT: Sustained.

MR. MANCHESTER: Your Honor, I'm going towards the foundation of her to say a conversion factor of one to one.

MS. GILLETTE-WALKER: And, Judge, you already ruled that she's permitted to say that and she has.

THE COURT: Sustained.

BY MR. MANCHESTER:

Q. The number one conversion, you are just saying that -- you're just using a number to say that it doesn't require a conversion, right? Apples and apples. You don't convert an apple to an apple, do you?

A. No.

Q. The necessity of conversion is to take, in this case, is to take less than whole blood sample results to bring it down to whole blood and grams per deciliter equivalent; is it not? That's the basis of the necessity for conversion?

A. Correct.

Q. Okay. What study did you get the one-to-one conversion rate from?

MS. GILLETTE-WALKER: Objection.

THE COURT: Sustained.

BY MR. MANCHESTER:

Q. What was the methodology for you to determine --

MS. GILLETTE-WALKER: Objection.

THE COURT: Sustained.

MR. MANCHESTER: -- a one-to-one conversion rate?

BY MR. MANCHESTER:

Q. Who told you to say one-to-one conversion rate?

MS. GILLETTE-WALKER: Objection.

THE COURT: Sustained. Mr. Manchester, that's the last one, okay.

MR. MANCHESTER: I am just making a record, Your Honor.

THE COURT: Okay.

BY MR. MANCHESTER:

Q. So when you test the less than whole blood sample, you don't do any type of conversion on it?

MS. GILLETTE-WALKER: Objection.

THE COURT: Sustained.

BY MR. MANCHESTER:

Q. The results you get from the machine, all you do is multiply them by two?

A. Correct.

Q. Now, when we went over centrifugation; do you recall that?

A. Yes.

Q. The precipitate is the solids at the bottom?

A. Correct.

Q. You do not test them for the alcohol content, do you?

A. No.

Q. You just test the clear liquid?

A. Correct.

N.T., 2/28/2013, at 72-76, 91-93, 118. Further, it appears the court did not permit Emigh to obtain an expert to rebut the 1:1 conversion ratio. N.T., 2/25/2013, at 13 (noting the court denied a defense request for a continuance to obtain an expert).

On February 28, 2013, a jury convicted Emigh of violating 75 §§ 3802(a)(1) and (c). On May 9, 2013, the court sentenced him. Emigh filed post-sentence motions, which the court denied on May 23, 2013. On June 4, 2013, Emigh filed an untitled document and, on June 11, 2013, he filed a timely notice of appeal. The court issued a 1925(a) opinion.[10]

## III. **Question Presented**

Appellants raise the following question on appeal:

> The trial court erred as a matter of law in allowing a hearing on the Commonwealth's motion in limine where the Commonwealth asked the trial court to rule that the Commonwealth did not have to convert a less than whole blood test result to a whole blood equivalent (in essence to allow a 1:1 conversion factor) at trial in each and every case in Centre County where the blood was tested using a 10% solution of TCA to precipitate out the solids and then testing the resulting supernatant. In essence the Commonwealth asked the court through a motion in limine to create an irrebutable presumption in the instant cases and all future cases that a conversion factor of 1:1 shall be used and it is a conversion factor that is generally accepted in the scientific community which takes a fact

---

[10] In its 1925(a) opinion, the trial court found Emigh failed to file a timely notice of appeal. Opinion and Order, 6/5/2013. However, although the original document filed on June 4, 2013 was unclear, Emigh filed a notice of appeal on June 11, 2013, within the thirty-day time period for filing an appeal.

that the Commonwealth must prove to a fact finder beyond a reasonable doubt out of the hands of the fact finder and makes it an irrebutable presumption.

Appellants' Brief at 1.

## IV.    Standard of Review

The admissibility of evidence is a matter solely within the discretion of the trial court, and we will reverse an evidentiary ruling only when an abuse of discretion has occurred. *See Commonwealth v. Dillon*, 925 A.2d 131, 136 (Pa.2007).  "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Id.* (quoting *Grady v. Frito–Lay, Inc.,* 839 A.2d 1038, 1046 (Pa.2003)).

## V.    Legal Analysis

In *Renninger*, this Court found supernatant testing invalid unless the Commonwealth presented "converting evidence . . . to establish the alcohol content of whole blood."  682 A.2d at 362. Conversion factors may vary by case, but they must be generally accepted within the scientific community. *See Commonwealth v. Kohlie*, 811 A.2d 1010, 1015 (Pa.Super.2002). The conversion factor may be challenged by the defense through cross-examination of the Commonwealth's expert witness or presentation of a rebuttal witness; however, only the jury makes the credibility determination that controls the outcome of the case. *See id*., at 1016.

In **Commonwealth v. Haight**, the Commonwealth presented expert evidence that the blood alcohol content in the supernatant sample did not significantly differ from the blood alcohol content in the whole blood sample. 50 A.3d 137, 142-43 (Pa.Super.2012). The defendant offered expert testimony that there was "no accepted 'conversion range' for supernatant to whole blood." **Id.** at 143. The defense expert opined that supernatant results of .181% could be converted to a gas test on whole blood of .166%. **Id.** For a second sample tested, the expert did not give a definitive conversion. **Id.** The trial court, following a bench trial, accepted the defendant's expert testimony and calculated a conversion rate for the second supernatant sampled. **Id.** The court concluded that, based on the testimony of the defense expert, the blood alcohol content after conversion to whole blood was sufficient to sustain a conviction under § 3802(b). **Id.**

In **Commonwealth v. Karns**, the Commonwealth presented the testimony of the lab technician who prepared and analyzed the blood sampled. 50 A.3d 158 (Pa.Super.2012). The technician testified that a machine performed the conversion, she did not know how the machine performed the conversion, and the calculation performed on the raw results did not address conversion. **Id.** at 164-65. This court found the evidence insufficient to sustain the defendant's conviction. **Id.** at 165.

In **Commonwealth v. Brugger**, the trial court denied the Commonwealth's motion in limine requesting a pre-trial hearing on the admissibility of blood alcohol content test results. 88 A.3d 1026

(Pa.Super.2014). When denying the motion for a hearing, the trial court referenced an *en banc* opinion of the Lebanon County Court of Common Pleas. *Id.* at 1030. That *en banc* decision addressed the Commonwealth's omnibus pre-trial motion in limine seeking a hearing and order concerning the admissibility of supernatant blood alcohol content in driving under the influence cases for eight separate defendants. *Id.* at 1030-31. The *en banc* court denied the motion, reasoning the omnibus motion could run afoul of rules for consolidation of criminal trial and noting logistical concerns. *Id.* at 1031. The court then addressed the case law relied on by the Commonwealth and noted there were "several areas of uncertainty relative to" the hospital's testing protocol for supernatant. *Id.* at 1032.

This Court found the trial court erred in denying the motion for a hearing. ***Brugger***, 88 A.3d at 1034-35. It found the court's reliance on the *en banc* decision inappropriate, as the *en banc* decision rested on a procedural issue. *Id.* at 1034. Further, the Court noted that, although the law requires a reliable conversion factor to determine the blood alcohol content of whole-blood, "the source, content, and rigor required of such testimony remains less than clear." *Id.* at 1035. The Court reasoned that, if the Commonwealth is denied the opportunity to present evidence and to obtain a ruling on the admissibility of the results, this Court and the Supreme Court will not have an opportunity to determine what evidence is sufficient. *Id.*

Here, the trial court found the Commonwealth could meet its burden of proof of a conversion from a supernatant test to a whole blood test through the testimony of a lab technician that the conversion ratio was 1:1. At trial, it did not require the Commonwealth to present expert testimony regarding the 1:1 ratio.

It was not error for the trial court to hold a hearing[11] on the motion in limine to determine whether the Commonwealth could present evidence that the conversion factor was 1:1. *See Brugger*, 88 A.3d at 1035. As the court in *Brugger* noted, there has been little guidance regarding "the source, content, and rigor required of" converting evidence. *Id.* The court, however, erred when it allowed the Commonwealth to present evidence of a 1:1 conversion ratio to the jury without expert testimony and prevented Appellants from presenting expert testimony at trial. The lack of expert testimony prevented Appellants from meaningfully cross-examining the witnesses regarding the conversion factor. The issue of whether Appellants' blood alcohol content met the statutory limit was for the jury, after consideration of all evidence, including converting evidence and any challenges thereto. *See Kohlie*, 811 A.2d at 1016; *see also Karns*, 50 A.3d at 165 (testimony of lab technician insufficient to sustain conviction). The trial court's in limine ruling prevented the jury from determining a fact

---

[11] Although it appears no hearing occurred in *Stahl*, the parties agreed the court could rely on the notes of testimony from *Daughenbaugh*.

that the Commonwealth was required to prove, i.e., the blood alcohol content of whole blood was greater than 0.16%. This included a determination of any applicable conversion factor from supernatant to whole blood.

Judgments of sentence reversed. The cases are remanded to the trial courts for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/26/2014